FILED
United States Court of Appeals
Tenth Circuit

**March 8, 2016**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SIERRA CLUB,

       Plaintiff - Appellant,

v.

OKLAHOMA GAS AND ELECTRIC
COMPANY,

       Defendant - Appellee.

No. 14-7065

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. NO. 6:13-CV-00356-JHP)**

---

David C. Bender, McGillivray Westerberg & Bender LLC (Jacquelyn L. Dill, Dill Law Firm, P.C., Oklahoma City, Oklahoma, with him on the briefs), Madison Wisconsin, for Appellant.

Brian J. Murray, Jones Day (Charles T. Wehland and Meghan E. Sweeney, Jones Day, Chicago, Illinois, and Donald K. Shandy and Patrick R. Pearce, Jr., Ryan Whaley Coldiron Shandy PLLC, Oklahoma City, Oklahoma, with him on the brief) Chicago, Illinois, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **BRISCOE**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

Sierra Club brought a citizen suit seeking civil penalties against Oklahoma Gas and Electric Company "(OG&E)" for alleged violations of the Clean Air Act. Sierra Club asserts that in March and April of 2008, OG&E, the owner and operator of a coal-fired power plant in Muskogee, modified a boiler at the plant without first obtaining an emission-regulating permit as required under the Act. Because Sierra Club filed its action more than five years after construction began on the plant, the district court dismissed its claim under Rule 12(b)(6) as barred by the statute of limitations. The court also dismissed Sierra Club's claims for declaratory and injunctive relief because these remedies were predicated on the unavailable claim for civil penalties.

We agree with the district court and conclude that Sierra Club's claim for civil penalties is statutorily time-barred under 28 U.S.C. § 2462 because it was brought more than five years after the date when the cause of action first accrued. In addition, Sierra Club's claims for declaratory and injunctive relief are precluded because they are based on the same facts as the time-barred claim for civil penalties.

Accordingly, we AFFIRM.

## I. Background

The Clean Air Act (CAA) directs states to achieve and maintain air quality standards set by the EPA. Each state must adopt a state implementation plan (SIP) for meeting these goals, subject to EPA approval. *See* 42 U.S.C.

§§ 7407(a), 7410(a), 7410(k). In "attainment" areas, where air quality is already up to standards, *see id.* § 7407(d)(1)(A)(ii), SIPs must comply with the federal Prevention of Significant Deterioration (PSD) program, *see id.* §§ 7470–7492. The purpose of this program is to protect air quality from significant deterioration caused by new emissions. *See id.* § 7470. To further that aim, the PSD program provides that a "major emitting facility" cannot be constructed or modified without a permit that sets emission limitations. *Id.* § 7475(a)(1)[1]; *see also id.* § 7479(2)(c) (defining "construction" to include "the modification . . . of any source or facility"). Oklahoma's SIP, which has been approved by the EPA, honors this requirement by providing that "[n]o person shall cause or allow the construction or modification of any source" without obtaining a PSD permit from the Oklahoma Department of Environmental Quality. Oklahoma SIP Regulations

---

[1] In relevant part, the statute reads:

> (a) Major emitting facilities on which construction is commenced
>
> No major emitting facility on which construction is commenced after August 7, 1977, may be constructed in any area to which this part applies unless—
>
> (1) a permit has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part . . . .

42 U.S.C. § 7475.

§ 1.4.2(a)(1);[2] *see also id.* § 1.4.4 (setting specific requirements that major emission sources must meet to receive a permit).

According to the complaint, OG&E began modifying a boiler at its Muskogee power plant sometime in March 2008. The plant is a major emitting facility located in an attainment area and therefore was subject to the PSD permit requirement. OG&E did not obtain a PSD permit before commencing the project. Nor did the company secure one before the modification ended sometime in April 2008. Sierra Club alleges that the modification resulted in an increase in the emission of pollutants.

Although the modification was completed in April 2008, Sierra Club took no legal action until 2013. At that time, it notified OG&E that it intended to bring suit under the CAA, which grants any person a cause of action against an entity that constructs or modifies a major emitting facility without a PSD permit. *See* 42 U.S.C. § 7604(a)(3). Sierra Club sought civil penalties under 42 U.S.C.

---

[2] In relevant part, the Oklahoma SIP reads:

> No person shall cause or allow the construction or modification of any source without first obtaining an authority to construct or modify from the Commissioner as to comply with all applicable air pollution rules and regulations, and not to exceed ambient air quality standards or applicable federal new source performance standards (NSPS) and national emission standards for hazardous air pollutants (NESHAPS), Sections 111 and 112 of the Federal Clean Air Act.

Oklahoma SIP Regulations § 1.4.2(a)(1).

§ 7413(e)(2) for each day of unpermitted modification activity, as well as declaratory relief and an injunction requiring OG&E to obtain a PSD permit and upgrade its pollution controls so as to comply with Oklahoma regulations. The parties subsequently entered an agreement that tolled the statute of limitations effective April 1, 2013.

Because the CAA does not specify a statute of limitations for bringing a citizen suit for civil penalties, the default five-year statute of limitations for civil penalties, fines, and forfeitures under federal law applies. *See* 28 U.S.C. § 2462. Thus, the parties agreed that any penalties originating before April 1, 2008—five years prior to the tolling agreement—were time-barred. The question was whether Sierra Club could maintain a claim for penalties originating on April 1, 2008 or later.

The district court dismissed Sierra Club's claim for civil penalties, holding any failure on OG&E's part to obtain a PSD permit would have been a violation that accrued at the commencement of modification of the boiler, which was before April 1, 2008. The court also dismissed Sierra Club's equitable claims for injunctive and declaratory relief because they were predicated on the time-barred legal claim.[3]

---

[3] In a separate cause of action, Sierra Club also asserted that the plant had exceeded limits on opacity and particulate matter outlined in a 1978 permit that authorized the initial construction of the boiler. Sierra Club voluntarily dismissed this claim.

## II. Analysis

Sierra Club makes two arguments. First, it contends that the statute of limitations does not bar its claim for civil penalties because OG&E continued to violate the CAA until it completed the modification, which was sometime after April 1, 2008. Second, it asserts that its claims for equitable relief are not expired because they are separate from its claim for civil penalties; Sierra Club seeks equitable relief as an alternative remedy, rather than as a means to enforce its civil penalties claim.

We consider these arguments in turn, first holding the statute of limitations bars Sierra Club's suit for civil penalties because the claim first accrued when modification commenced. We next hold Sierra Club's actions for injunctive and declaratory relief are precluded by the concurrent remedy doctrine.[4]

### A. Statute of Limitations

We review de novo "a district court's ruling regarding the applicability of a statute of limitations." *Plaza Speedway, Inc. v. United States*, 311 F.3d 1262, 1266 (10th Cir. 2002) (internal quotation mark omitted). A statute of limitations defense "may be appropriately resolved on a [Rule] 12(b) motion when the dates given in the complaint make clear that the right sued upon has been

---

[4] As we explain below, the concurrent remedy doctrine bars claims that "could be brought on the same facts." *United States v. Telluride Co.*, 146 F.3d 1241, 1248 n.12 (10th Cir. 1998).

extinguished." *Lee v. Rocky Mountain UFCW Unions & Emp'rs Tr. Pension Plan*, No. 92-1308, 1993 WL 482951, at \*1 (10th Cir. Nov. 23, 1993) (Table).

An action seeking civil penalties for failure to obtain a PSD permit must be brought "within five years from the date when the claim first accrued." 28 U.S.C. § 2462. The parties agree that a PSD permit is a pre-construction or pre-modification requirement, but disagree as to whether the beginning of the limitations period is delayed as long as the unpermitted construction or modification process continues. Sierra Club argues that the statute of limitations resets on each day of unpermitted construction or modification, which in this case included days after April 1, 2008.

Sierra Club raises two distinct theories: (1) OG&E committed a new, discrete violation on each day of unpermitted modification, which we refer to as a theory of "repeated violations"; or (2) OG&E committed a single violation when it began unpermitted construction, but that violation continued until construction was completed. We refer to the latter as a theory of "continuing violation." In Sierra Club's view, if either of these theories is correct, then the statute of limitations does not preclude civil penalties for days of modification beginning with April 1, 2008. In contrast, OG&E maintains that the failure to procure a PSD permit generated a single claim for one day's penalty that accrued only on the first day of modification, which of course occurred before April 1, 2008.

We need not consider whether OG&E's position is correct because we conclude that Sierra Club's claim for penalties is time-barred for other reasons. The statute of limitations begins to run as soon as a claim "*first* accrue[s]." (emphasis added). *Id.* As explained below, if any form of violation exists beyond the first day of unpermitted modification, it is best characterized as a continuing violation rather than a series of repeated violations.[5] And because this particular violation *first* accrued when modification commenced, the statute under § 2462 began to run on that date. That was more than five years before Sierra Club brought suit, and any penalties are accordingly time-barred.

A single violation continues over an extended period of time "when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act," as opposed to "conduct that is a discrete unlawful act." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Nat'l R.R. Passenger Corp. v.*

---

[5] The distinction between a single, continuing violation and repeated, discrete violations is important because an entirely new violation would first accrue apart from the other violations in the series and would begin a new statutory clock. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding that in the case of discrete discriminatory acts, as opposed to a hostile-work-environment claim involving multiple acts as part of the same claim, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act"); *Figueroa v. D.C. Metro. Police Dep't*, 633 F.3d 1129, 1135 (D.C. Cir. 2011) ("each violation gives rise to a new cause of action, each [cause of action] begins a new statute of limitations period" (quoting *Knight v. Columbus*, 19 F.3d 579, 582 (11th Cir. 1994))). In contrast, a single, continuing violation would not extend the limitations period of § 2462 because the statute would begin to run as soon as that violation *first* accrued and would not reset thereafter.

*Morgan*, 536 U.S. 101, 117 (2002)).  In other words, one violation continues when "the conduct as a whole can be considered as a single course of conduct." *Birkelbach v. SEC*, 751 F.3d 472, 479 n.7 (7th Cir. 2014).  The violation must involve some affirmative conduct within the limitations period and "not merely the abatable but unabated inertial consequences of some pre-limitations action." *Poster Exch., Inc. v Nat'l Screen Serv. Corp.*, 517 F.2d 117, 128 (5th Cir. 1975).

That is the situation when an emissions facility is constructed or modified without a permit, as constructing or modifying a facility is best characterized as a single, ongoing act.  To repeat, the CAA prohibits unpermitted construction or modification of a "major emitting facility."  42 U.S.C. § 7475(a)(1).  It is the act of constructing itself that is unlawful, *see Sierra Club, Inc. v. Sandy Creek Energy Assocs.*, 627 F.3d 134, 141 (5th Cir. 2010) (holding a related CAA preconstruction requirement "simply renders the act of constructing itself unlawful").  "Construct" is an "active verb[] that ha[s] force after . . . construction . . . has begun." *Wildearth Guardians v. Lamar Utils. Bd.*, Civil Action No. 1:09-CV-02974- DME-BNB, 2010 WL 3239242, at *5 (D. Colo. Aug. 13, 2010).  Thus, "construct" should not be read to encompass a disjointed series of discrete acts of construction.  To "construct" is an ongoing project. Accordingly, if we accept Sierra Club's argument that some form of violation exists beyond the first day of modification, it must be characterized as a single, continuing violation.

-9-

Sierra Club argues that where a continuing violation exists, the limitations period under § 2462 does not begin to run until the final day of the violation— here, the final day of unpermitted modification, which was sometime after April 1, 2008.  Although we could consider this argument forfeited because it was not raised below, we reject it anyway.[6]  The specific statute of limitations at issue begins to run when a claim "*first* accrue[s]."  28 U.S.C. § 2462 (emphasis added).  "[A] claim accrues when the plaintiff has a complete and present cause of action." *Gabelli v. SEC*, 133 S. Ct. 1216, 1220 (2013) (internal quotation marks omitted).  In other words, a claim accrues as soon as "the plaintiff can file suit and obtain relief."  *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 610 (2013) (internal quotation marks omitted).  And a continuing violation is actionable even before the last act of the violation where the conduct that has already occurred is sufficient to support a claim.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has 'occurred,' even if it is still occurring.").

---

[6] Sierra Club claims that it did raise this argument below, but the instances it cites appear to advance a repeated violations theory, rather than a continuing violation theory.  "[V]ague, arguable references to a point in the district court proceedings do not preserve the issue on appeal." *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993) (alterations omitted).  And raising a related theory is also insufficient. *Id.* at 722.

In this case, it is clear that Sierra Club could have brought suit for the PSD permit violation on the first day of modification. Even one day of unpermitted modification would have presented a "complete and present" violation of the statute. *See* 40 C.F.R. § 51.166(a)(7)(iii) ("No new major stationary source or major modification to which the requirements [herein] apply *shall begin actual construction* without a permit that states that the major stationary source or major modification will meet those requirements." (emphasis added)); *United States v. Midwest Generation, LLC*, 720 F.3d 644, 647 (7th Cir. 2013) ("The violation is complete when construction commences without a permit in hand."); *see also United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 285 (3d Cir. 2013) (quoting the same). Consequently, Sierra Club's cause of action first accrued prior to April 1, 2008, even if the violation continued until some later date. Any penalties stemming from the alleged violation are therefore time-barred.

Sierra Club asserts that because "[a] penalty may be assessed for each day of violation," 42 U.S.C. § 7413(e)(2), the claim reaccrues on each day of a continuing violation. But whether the claim reaccrues does not answer or even address when it *first* accrues. We see a difference between the availability of a statutory penalty and the initial accrual of the violation giving rise to penalties.

Next, Sierra Club cites four cases for the claim that a continuing violation extends the deadline to file suit under § 2462. Three of them are easily

-11-

distinguished.  In the first, *Havens Realty Corp. v. Coleman*, the Supreme Court held "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period," the statutory clock begins upon "the last asserted occurrence of that practice."  455 U.S. 363, 380–81 (1982).  *Havens* concerned a different statute of limitations employing substantially different language: "A civil action shall be commenced within one hundred and eighty days after the alleged discriminatory housing practice occurred."  *Id.* at 380 n.22 (internal quotation marks omitted).  That statute allowed the limitations period to continue as long as the discriminatory practice "occurred."  *Id.* at 381.  In contrast, the clock under § 2462 begins only once, when a claim *first* accrues.  If the limitations period under § 2462 reset each day, the statutory term "first" would have no operative force.  In other words, the statute could just as easily state that the limitations period begins whenever "the claim accrues."

Second, Sierra Club's reliance on *United States v. Jaynes*, 75 F.3d 1493 (10th Cir. 1996), as well as its reliance on our unpublished decision in *United States v. Shaw*, 150 F. App'x 863 (10th Cir. 2005) are equally unavailing.  Those cases involved the distinct "continuing offense" doctrine in the criminal context.  There, a "continuing offense" "is a term of art" that we generally avoid applying unless "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must

-12-

assuredly have intended that it be treated as a continuing one." *Jaynes*, 75 F.3d at 1506 (internal quotation marks omitted).  More importantly, like *Havens*, these cases did not concern the unique "first accrued" language of § 2462.

Lastly, Sierra Club points to a Fifth Circuit administrative appeal for the proposition that the beginning of the limitations period under § 2462 is extended as long as a violation continues.  In *Newell Recycling Co. v. EPA*, the Fifth Circuit upheld an administrative determination that a claim against a recycling facility's improper disposal of pollutants did not accrue until the facility properly disposed of the contaminated soil.  231 F.3d 204, 206–07 (5th Cir. 2000).  As a result, the limitations period under § 2462 did not begin to run until the proper disposal, *i.e.*, the end of the violation.  *Id.* at 206.  We find this holding unpersuasive.  First, the court deferred to the interpretation of the administrative board and did not undertake a de novo review of the statute.  Second, the board's reasoning that no claim "accrued" until the violative conduct ended is inconsistent with more recent Supreme Court cases that hold a claim accrues "when the plaintiff can file suit and obtain relief." *Heimeshoff*, 134 S. Ct. at 610 (internal quotation marks omitted); *see also Gabelli*, 133 S. Ct. at 1220 ("[A] claim accrues when the plaintiff has a complete and present cause of action." (internal quotation marks omitted)).  Finally, the court nowhere addressed the significance of the phrase, "first accrued," in § 2462.  Thus, to the extent that *Newell* suggests the

-13-

limitations period under § 2462 does not begin to run as long as an already-ripe violation continues, we disagree.

As a final note, we have observed that "the continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003) (internal quotation marks omitted). It follows that "a continuing violation claim fails if the plaintiff knew, or through the exercise of reasonable diligence would have known" of the injury when it began. *Id.* at 1184 (internal quotation marks omitted). Here, nothing prevented Sierra Club from discovering, within five years, that it had an actionable claim as soon as OG&E began construction.[7]

In sum, § 2462 requires that a suit be filed within five years of when a claim first accrues, which in this case was when OG&E commenced modification of the boiler. Because Sierra Club brought suit more than five years after that date, its claim is now time-barred.

### B.  Concurrent Remedy Doctrine

Sierra Club also seeks declaratory relief and an injunction requiring OG&E to obtain a PSD permit and upgrade its pollution controls. But it relies on the

---

[7] We express no opinion on OG&E's exposure to civil penalties had a timely suit been commenced. *See* 42 U.S.C. § 7413 (allowing civil penalties for each day of violation of the CAA). We only hold that Sierra Club knew it had a cause of action when OG&E commenced construction.

same theory that underlies its claim for civil penalties: OG&E unlawfully modified a boiler at the Muskogee plant without a permit.[8] Even so, Sierra Club contends that if its suit for civil fines is time-barred, the statute of limitations has no effect on its equitable claims. We disagree because the equitable claims are based on the same facts supporting the time-barred legal claim.

Although § 2462 bars Sierra Club's suit for civil penalties, its language does not, in and of itself, limit actions for equitable relief. *See United States v. Telluride Co.*, 146 F.3d 1241, 1245 (10th Cir. 1998). Nonetheless, the concurrent remedy doctrine provides that a statute barring a legal claim will also bar an equitable claim "when the jurisdiction of the federal court is concurrent with that at law, or the suit is brought in aid of a legal right." *Russell v. Todd*, 309 U.S. 280, 289 (1940). This rule applies whenever "an action at law or equity could be brought on the same facts." *Telluride*, 146 F.3d at 1248 n.12.

Relying on *Russell*, 309 U.S. at 289, Sierra Club contends that an equitable action is only brought "in aid of" a legal right when it would be necessary to effectuate a legal remedy. In *Russell*, a bank's shareholders were individually responsible for the bank's debts. *Id.* When the bank's creditors sued the shareholders, the district court needed to determine the extent of liability for each

---

8 Sierra Club concedes, "The only claim at issue in this appeal is Sierra Club's claim that by constructing a modification to its Muskogee coal-fired power plant without a permit, the Oklahoma Gas & Electric Company violated 42 U.S.C. § 7475(a)." Aplt. Br. at 4.

shareholder.  To do that, the court first had to exercise its equity jurisdiction to perform an assessment that would uncover the relevant facts.  *Id.* at 285–86.  The Supreme Court held the primary action was itself an action in equity, *id.* at 286–87, and therefore that a legal statute of limitations did not apply, *id.* at 289.  The Court explained, however, that where the primary claim is a legal claim barred by a legal statute of limitations, the exercise of equity jurisdiction to determine the underlying facts would also be barred.  *Id.*  Sierra Club argues that this case only holds an equitable claim is barred where it is a mere prerequisite to resolving a legal dispute.  In Sierra Club's view, a stand-alone request for equitable relief can therefore survive even where a legal remedy based on the same facts is expired.

We disagree.  Sierra Club's narrow reading of *Russell* contradicts our observation that an equitable claim is unavailable when it can be brought on the same facts as an expired legal claim.  *Telluride*, 146 F.3d at 1248 n.12.  It follows from this rule that an equitable claim is barred where "the only difference between" it and a time-barred legal claim "is the relief sought."  *Grynberg v. Total S.A.*, 538 F.3d 1336, 1353 (10th Cir. 2008).  Otherwise, a legislative determination that a particular time limit is sufficient to take action against wrongful conduct "could be undermined by permitting less timely claims for such [conduct] when only equitable remedies are sought."  *Id.*

-16-

Relying on the same principles, the Eighth and Eleventh Circuits have similarly held that where a statute of limitations precludes civil penalties for failing to obtain a PSD permit, equitable remedies based on the same facts are barred as well. *See Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1018–19 (8th Cir. 2010); *Nat'l Parks & Conservation Ass'n v. Tenn. Valley Auth.*, 502 F.3d 1316, 1327 (11th Cir. 2007). We agree and hold Sierra Club cannot win injunctive or declaratory relief for OG&E's alleged PSD permit violation because its legal remedy based on the same facts is time-barred.[9]

Finally, Sierra Club asserts that the concurrent remedy doctrine is inapplicable because it is acting as a "private attorney general" in place of the government. A suit brought by the government in its sovereign capacity "is not

---

[9] In its reply brief, Sierra Club asserts for the first time that its claim for injunctive relief is not based on the same facts as its claim for civil penalties because the former requires additional showings. These include irreparable injury, the inadequacy of legal remedies, that "the balance of hardships between the plaintiff and defendant" favors an equitable remedy, and "that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). We generally do not consider arguments raised for the first time in a reply brief. *See* Fed. R. App. P. 28(a)(8)(A); *United States v. Wayne*, 591 F.3d 1326, 1336 n.9 (10th Cir. 2010). Regardless, Sierra Club's argument fails because all of the facts supporting its time-barred legal claim are essential to its equitable claims. In *Grynberg*, the plaintiffs' equitable claims for unjust enrichment required showing that the defendants had been enriched, 538 F.3d at 1351, which was not needed for its expired legal claims for breach of fiduciary duty, *see id.* at 1346–47. Nonetheless, the unjust-enrichment claims were "predicated on the same alleged misconduct—a breach of fiduciary duty, primarily arising from the use of confidential information." *Id.* at 1351–52. We see no support for the proposition that an equitable claim is only barred if each of its elements is identical to each element of the barred legal claim.

subject to a time limitation unless Congress explicitly imposes one and any statute of limitations sought to be applied against the United States must receive a strict construction in favor of the Government." *Telluride*, 146 F.3d at 1248 (internal quotation marks omitted). Accordingly, the concurrent remedy doctrine does not apply to the government. *Id.* at 1249. But Sierra Club is not the government, regardless of how it views its own role. A citizen suit under the CAA is brought on the plaintiff's "own behalf." 42 U.S.C. § 7604(a). Private plaintiffs cannot be said to "represent the public at large in the same way the government does when it brings suit to enforce the statute," *Nat'l Parks*, 502 F.3d at 1327, and thus are not eligible for the government's exemption.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's Rule 12(b)(6) dismissal of Sierra Club's claims.

No. 14-7065, <u>Sierra Club v. Oklahoma Gas & Electric Co.</u>

**BRISCOE**, Circuit Judge, dissenting.

This case presents an issue of first impression in this and every other circuit: Is the statute of limitations for unpermitted construction or modification in violation of 42 U.S.C. § 7475(a) tolled so long as the construction or modification continues? The majority concludes that because this claim "first accrued" on the first day of construction, tolling for a continued violation is prohibited. Because this holding ignores the nature of tolling doctrines, as well as the text and purpose of the Clean Air Act's Prevention of Significant Deterioration (PSD) program and the Oklahoma State Implementation Plan (SIP), I respectfully dissent.

The majority is correct that Sierra Club's claim "first accrued" within the meaning of 28 U.S.C. § 2462 when OG&E first began modification of a boiler at its Muskogee power plant. But that conclusion should not end our inquiry. The majority conflates the accrual date with a complete bar on tolling doctrines which, if applied, extend the timeliness of a claim notwithstanding an expired statute of limitations. Here, application of the "continuing violation" tolling doctrine[1] is

---

[1] Contrary to the majority's conclusion, Sierra Club preserved its continuing violation argument. In its Response to OG&E's Motion to Dismiss, Sierra Club made arguments identical to those made on appeal regarding the text of the Clean Air Act, Oklahoma SIP, and case law. Sierra Club argued that the act of construction is an ongoing one, actionable as long as construction

(continued . . . )

( . . . continued)

(continued...)

appropriate for three reasons. First, the plain text of the Clean Air Act, supported by Oklahoma's SIP, prohibits the "construction" or "modification" of regulated air emissions sources, not the "commencement" of those activities. Second, cases from other circuits, rejecting the argument that *operation* of an unpermitted source is not a continuing violation, draw a principled line between the end of construction and the subsequent operation of a source. Third, characterizing a violation of the PSD program as a one-time occurrence severely undermines the structure of the program Congress so carefully crafted; but tolling in this instance does not undermine the purposes of statutes of limitations.

## I

### *The continuing violation doctrine*

The continuing violation doctrine tolls the statute of limitations "for a claim that otherwise would be time-barred where the violation . . . continues to occur within the limitations period." Nat'l Parks & Conservation Ass'n, Inc. v. Tenn. Valley Auth., 502 F.3d 1316, 1322 (11th Cir. 2007) (citing Havens Realty

---

[1](...continued)
continues. App. at 74, 75, 77 n.2, 78. Moreover, the cases discussed in depth by both parties and the district court are the few authorities to speak to application of the continuing violation theory to PSD violations, so the issue was fairly raised. While Sierra Club failed to label their theory as a "continuing violation" theory before the district court, to call this argument forfeited ignores the substantive arguments for lack of a technical label.

Corp. v. Coleman, 455 U.S. 363, 380 (1982)).[2]  Where a violation is "ongoing, rather than a single event" and is "extant" within the limitations period, enforcement of that violation is timely, even if the violation "first accrued" outside of the limitations period.  Interamericas Invs., Ltd. v. Bd. of Governors of the Fed. Reserve Sys., 111 F.3d 376, 382 (5th Cir. 1997) (citing Toussie v. United States, 397 U.S. 112 (1970); and Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 502 n.15 (1968)) (tolling 28 U.S.C. § 2462 for a continuing securities violation).

### *The Clean Air Act and Oklahoma SIP*

Looking to the substantive statute for guidance on the nature of the PSD violation, the text of both the Clean Air Act and the EPA-approved Oklahoma SIP strongly support application of the continuing violation doctrine.  The Clean Air Act requires that "[n]o major emitting facility . . . *may be constructed [or modified]* . . . unless . . . a permit has been issued."  42 U.S.C. §§ 7475(a)(1), 7479(2)(c) (emphasis added).  Additionally, the citizen suit provision that empowers Sierra Club's cause of action authorizes suit "against any person who *proposes to construct or constructs*" a facility without a permit.  42 U.S.C. § 7604(a)(3) (emphasis added).  Similarly, the Oklahoma SIP requires that "[n]o

---

[2] Sierra Club cites Havens merely as an example of the continuing violation theory generally.  The majority's attack on Havens's facts is therefore of little consequence to Sierra Club's arguments specific to PSD violations.

person shall cause or allow *the construction or modification* of any source" without obtaining a PSD permit from the Oklahoma Department of Environmental Quality. Oklahoma SIP Regulations § 1.4.2(a)(1) (emphasis added). None of these prohibitions focuses on the commencement of construction; they focus instead on construction or modification as a whole.

The majority is correct when it states: "It is the act of constructing itself that is unlawful," and "[t]o 'construct' is an ongoing project." Maj. Op. at 9. While acknowledging that "constructing or modifying a facility is best characterized as a single, ongoing act," id., the majority ignores the statutory and regulatory language. Instead, the majority inserts narrowing terms which are not there, characterizing the violation as the act of commencing construction, rather than the whole act of construction. But 42 U.S.C. § 7475(a) indicates that Congress considered and rejected limiting PSD violations to the commencement of construction. In defining the jurisdiction of the PSD amendments, Congress stated that facilities "on which construction is commenced after" the date of enactment would be subject to the requirements. 42 U.S.C. § 7475(a). In contrast, Congress omitted any mention of "commencing" construction in the text of the actual prohibition. Id. ("No major emitting facility . . . may *be constructed* . . . .") (emphasis added). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion

-4-

or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)).[3] Rote reliance on "first" accrual does not alter the statute's language or negate Congress's intent.

The majority's reliance on an EPA regulation that references the "begin[ning of] actual construction" does not overcome this statutory language. See Maj. Op. at 11 (quoting 40 C.F.R. § 51.166(a)(7)(iii)). By relying on this regulation over the plain language of the Clean Air Act and the Oklahoma SIP, the majority ventures into administrative law and co-federalism issues far beyond the scope of this case. More importantly, the majority relies on this regulation merely for the accepted premise that the PSD claim "first accrued" when OG&E began its unpermitted modification. The majority again mistakes the date of first accrual with a bar on tolling doctrines, which permit otherwise time-barred claims.

Were we to toll 28 U.S.C. § 2462 for a continuing violation based on a textual reading of the underlying statute, we would not be the first to do so. See Interamericas Invs., 111 F.3d at 381–83; see also Birkelbach v. S.E.C., 751 F.3d

_____

[3] The title of 42 U.S.C. § 7475(a) is "Major emitting facilities on which construction is commenced." OG&E argued this title indicates that the violation is the commencement, rather than the whole act, of construction. Properly read, however, this title refers to the applicability of § 7475 to those facilities on which construction was commenced after the date of enactment, and further supports an inference that Congress intentionally declined to define PSD violations as the mere commencement of construction.

472, 479 (7th Cir. 2014). In Interamericas Invs., the Fifth Circuit applied the continuing violation doctrine to securities reporting violations subject to the § 2462 statute of limitations. 111 F.3d at 381–83. The court was persuaded that the continuing violation doctrine applied because of the underlying statute's precise language defining the violation, the implementing agency's interpretation, and the fact that the statute provided daily penalties. Id. The Fifth Circuit concluded, therefore, that applying a continuing violation theory was necessary to implement congressional intent. Id. at 382–83. This case, although arising under different subject matter, is no different analytically. The plain language of the Clean Air Act and the implementing Oklahoma SIP precisely prohibit construction and modification, not just the commencement of those activities. This language reveals congressional intent that the violation be considered a continuing one at least so long as the unpermitted construction or modification continues.

### *Distinguishing continuing "operating" violations*

The district court's and majority's reliance on cases from other circuits which purportedly address the issue at hand is misplaced. No other circuit has considered the continuing violation doctrine in the context of PSD violations where construction was ongoing within the limitations period. The majority's citations to United States v. Midwest Generation, LLC, 720 F.3d 644, 646–47 (7th Cir. 2013), and United States v. EME Homer City Generation, L.P., 727 F.3d 274,

-6-

283–88 (3d Cir. 2013) are useful, at most, for the persuasive value of their dicta. These cases considered whether a PSD violation continued so long as the emissions source, constructed or modified without a permit, was in *operation*. See also Sierra Club v. Otter Tail Power Co., 615 F.3d 1008, 1014–15 (8th Cir. 2010); Nat'l Parks & Conservation Ass'n, 502 F.3d at 1322–25. In all of these cases, construction or modification was completed outside of the five-year statute of limitations period. Thus, contrary to the majority's indication, no circuit court, until today, has rejected the argument that the PSD violation continues as long as construction or modification continues.

The only views expressed by these sister circuits on the issue presented are found in dicta in two cases, each pointing us in a different direction. In Otter Trail Power, the Eighth Circuit noted in its rejection of the continuing operations argument that "[i]t is . . . clear that each of [the plaintiff's] PSD claims first accrued upon *commencement* of the relevant modification." 615 F.3d at 1014 (emphasis added). The other reference is found in EME Homer, where the Third Circuit stated: "Like Rome, facilities are not built—or modified—in a day. It is possible that the maximum daily fine accrues each day the owner or operator spends modifying or constructing the facility—from the beginning of construction to the end of construction." EME Homer, 727 F.3d at 288. The Third Circuit also summarized the outcome of its holding as follows: "If the EPA does not object within five years of the *completion of a facility's modification*, then it loses

-7-

the right to seek civil penalties under the statute of limitations." Id. at 289 (emphasis added). "[W]hen more than five years have passed *since the end of construction* . . . , the Clean Air Act protects [the regulated party's] reasonable investment expectations." Id. (emphasis added).

I agree with the Third Circuit's view. The EME Homer court drew a well-principled line, based on the best reading of the Clean Air Act. Where construction or modification is ongoing without a permit, the violation continues and the statute of limitations is reasonably tolled. When construction is complete, so is the violation.

### *Clean Air Act policy and purpose*

Finally, there are persuasive policy reasons to conclude that the continuing violation doctrine tolls the statute of limitations here. The PSD program is the Clean Air Act's principal tool to preserve areas that are in compliance with the National Ambient Air Quality Standards (NAAQSs). Failure to toll the statute of limitations to include the length of the construction process undermines the structure of this critical tool by upsetting the balance of the costs of noncompliance. If the law begins to characterize failure to get a PSD permit as a one-day violation, regulated parties will employ that authority to argue that they can only be subjected to one day of penalties (here, a maximum $32,500, or $37,500 for current violations). 42 U.S.C. § 7413; 40 C.F.R. § 19.4. Wasting no time, OG&E made that argument here as support for its statute of limitations

-8-

theory.  See Maj. Op. at 7.  Thus, the majority's ruling today may unknowingly place a low cap on available penalties on projects in violation of the PSD program, even where construction commences within five years of filing suit. Many of the emissions sources regulated by the PSD program generate a great deal of revenue, and enjoy lower costs in the absence of control measures which the permitting process would require.

Such a low cost of noncompliance undermines the balance Congress crafted when it designed the PSD program.  This program allows state implementers like Oklahoma to allocate incremental increases in emissions among newly constructed and modified sources, usually requiring control measures on the facility that the regulated entity would not otherwise install.  This structure protects important interests–breathable, healthy air.  See 1970 U.S.C.C.A.N. 5356, 5356.  Without meaningful enforcement, emitters lose incentive to comply, and the program loses its principal tool to keep emissions at tolerable levels.

Unlike the integrity of the PSD program, policy concerns for the integrity of the statute of limitations are not implicated by this case.  The principal purpose of a statute of limitations is to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."  Gabelli v. S.E.C., 133 S. Ct. 1216, 1221 (2013) (quoting R.R. Telegraphers v. Ry. Express Agency, Inc., 321 U.S. 342, 348–49 (1944)).  It is understandable that regulated parties

would settle in their expectations and be entitled to repose after operating a completed facility for several years. See EME Homer, 727 F.3d at 289. But, while construction is ongoing, little is settled. Additionally, while construction is ongoing, loss of evidence is not a concern. Evidence continues to be created each day a project proceeds. The completion of modification or construction is therefore the appropriate place to end tolling, and begin expectations of repose.

## II

In sum, I conclude that tolling the statute of limitations for a violation of 42 U.S.C. § 7475(a) is appropriate so long as the unpermitted construction or modification is ongoing. I would therefore not reach the issue of whether injunctive relief is barred under the concurrent remedies doctrine. Because the district court dismissed Sierra Club's PSD claim as time-barred, I would reverse the judgment of the district court and remand for further proceedings.