**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 5, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LEONARD ENGLISH,

    Plaintiff - Appellant,

v.

SMALL BUSINESS
ADMINISTRATION; JOVITA
CARRANZA, Administrator of the Small
Business Administration,

    Defendants - Appellees.

No. 20-1010
(D.C. No. 1:17-CV-02548-MSK-NRN)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Leonard English, appearing pro se, appeals the district court's grant of

summary judgment to defendants on his claims of race discrimination and retaliation

in violation of Title VII of the Civil Rights Act, *see* 42 U.S.C. §§ 2000e-2(a)(1),

2000e-3(a), and the district court's denial of his Motion to Alter or Amend Judgment.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

We have jurisdiction under 28 U.S.C. § 1291 and affirm for substantially the same reasons stated in the district court's opinions and orders.

## I.  BACKGROUND[1]

English is an African-American who began working in 2007 for the United States Small Business Administration (SBA) as a Surety Bond Guarantee Specialist in the SBA's Denver Office of Surety Guarantees.  During the relevant time English's first-level supervisor was Jennifer Vigil, who is Caucasian, and his second-level supervisor was Peter Gibbs, who is African-American.

English claims he was subject to racial discrimination and retaliation that began after he complained in April 2014 to Vigil about the conduct of an Hispanic co-worker and continued until his termination in September 2016.  During that time, English filed multiple complaints of discrimination and retaliation with SBA officials, his congressman, and the Equal Employment Opportunity Commission (EEOC) regarding Vigil, Gibbs, and others.

The initial incident following English's complaint about the Hispanic co-worker occurred when Vigil, whose husband is Hispanic, revised her line-of-succession list, keeping the Hispanic co-worker and an Asian woman in first and second places, respectively, and adding a third person who was not an African-American.  English then asked Vigil when he would be added to the list, because he and another African-American employee who also was not on the list

---

[1] The district court set out the factual background of this case in detail, so the following summary suffices for our purposes.

2

were the most senior employees in the office. Vigil replied that the list would remain the same.

Vigil also began to lower English's performance reviews, and both she and Gibbs issued him letters of reprimand concerning various instances of misconduct. But of particular note are two suspensions proposed by Vigil and English's termination.

In February 2015, Vigil proposed suspending English for five days based on two incidents: English's failure to follow Vigil's instructions that he complete an assigned task by a deadline, and his taking a sick day without following established procedure. A senior SBA official who reviewed Vigil's suspension proposal in July 2015 dismissed the proposal regarding the sick-time incident because of a possible misunderstanding by English, but issued him a letter of reprimand concerning his failure to follow Vigil's instructions.

Vigil later proposed suspending English for 30 days after he had been absent without leave (AWOL). English's unauthorized absence occurred after Vigil suspended his telework privileges effective November 2, 2015, for alleged performance deficiencies. On November 3, English did not appear in the office for his scheduled shift. Vigil contacted English and directed him to report to work. English refused and then informed a human resources (HR) representative that he was invoking the "self-removal" provision of a Master Agreement (MA) governing the terms of his employment (apparently negotiated with the union representing SBA employees) and that he was refusing to come in to work until the SBA investigated

3

his concern that Vigil and her team were "volatile, hostile, and harassing."[2]  R. Vol. III at 643.  On November 5 an SBA official, Frank Lalumiere, advised English that his self-removal did not meet the MA's requirement that an employee have an objectively reasonable belief that his assigned duties posed a health or safety risk.  Lalumiere directed English to come in to work within an hour.  (The district court assumed that English complied.)  Based on this AWOL episode and other unprofessional conduct, Vigil proposed suspending English for 30 days.  Gibbs accepted Vigil's proposal in May 2016 and imposed a 30-day suspension.

Ultimately, Vigil proposed terminating English's employment.  In April 2016, Vigil asked English via instant messaging to come to her office and discuss two bond matters he was working on.  English balked and said he wanted "a witness."  R. Vol. I at 275.  Vigil told him it was "not disciplinary" and asked that he "[p]lease just come in and tell [her] about the[] 2 missed bids."  *Id.*  When English asked what she wanted to know, Vigil responded, "Please come into my office to discuss.  No need for back and forth argument."  *Id.*  English replied, "I detect some hostility.  Do I need to perform a self removal regarding this.  I'm very uncomfortable meeting with you."  *Id.*  Vigil then went to English's desk with a male co-worker to ask about the bids.  According to Vigil, the co-worker, and another employee, English stood up angrily, crossed his arms, asked what Vigil's "man" (referring to the co-worker) was

_____

[2] When properly invoked, the self-removal provision precludes the SBA from considering the employee "insubordinate" or placing him "on sick or annual leave or leave without pay, or AWOL status."  R. Vol. I at 132.

4

going to do for her, demanded a witness from HR, and threatened to self-remove. When Vigil went to get an HR employee, English left the office.

English informed SBA officials that he had performed a self-removal because he felt threatened by Vigil. Gibbs advised English that he had reviewed the incident and concluded that English had no valid reason for leaving the office without approval. Gibbs told English that if he did not return to the office by April 26, 2016, he would be considered AWOL. English did not return to work until May 17, 2016.

In August, based on English's absence from work and several other performance-related issues, Vigil proposed terminating English's employment. Gibbs accepted the proposal and removed English from his position in September 2016. The Merit Systems Protection Board (MSPB) affirmed the removal, and the EEOC concurred in the MSPB's conclusion that English did not establish an affirmative defense of unlawful discrimination.

English then filed suit in the United States District Court for the District of Colorado, asserting Title VII claims of racial discrimination and retaliation. Defendants moved for summary judgment on both claims. In granting the motion the district court assumed that English had established a prima face case of discrimination and a prima facie case of retaliation. But the court determined that he failed to establish a genuine issue of material fact whether defendants' legitimate, nondiscriminatory reasons for their actions were pretextual, and it granted summary judgment. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) (setting out pretrial burden-shifting framework used for resolving cases with

5

only indirect evidence of racial discrimination); *Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019) (explaining that *McDonnell Douglas* framework also applies to Title VII retaliation cases). English filed a Motion to Alter or Amend Judgment. The district court construed the motion as arising under Federal Rule of Civil Procedure 59(e) and denied it, rejecting English's arguments that he had established pretext on the basis of (1) Gibbs's allegedly false denial that he had seen a letter by English explaining why he had invoked self-removal in April 2016, and (2) violations by his superiors of the MA and the SBA's Standard Operating Procedures. English appeals.

## II. STANDARD OF REVIEW

We review de novo a district court's decision to grant summary judgment, applying the same standard governing the district court. *Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the denial of a Rule 59(e) motion for abuse of discretion. *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019). We construe English's pro se filings liberally but without acting as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## III. DISCUSSION

On appeal English reiterates his allegations of discriminatory and retaliatory conduct and reasserts that the evidence was sufficient to support his claims. But his

6

contentions are largely conclusory, and after reviewing the district court's orders, along with the parties' appellate materials and the relevant legal authority, we perceive no error. The court properly reviewed the evidence allegedly showing pretext and explained that English had not presented any evidence that the reasons given by the defendants for any adverse employment actions were a pretext for unlawful racial discrimination or retaliation. (The court also noted the absence of evidence of a racially-hostile working environment.) We therefore affirm for substantially the same reasons set forth in the court's summary-judgment order filed August 8, 2019. We also see no abuse of discretion in the district court's December 18, 2019 order denying English's Rule 59(e) motion and therefore affirm that order.

In so doing, we reject English's argument that the district court violated summary-judgment procedures by making credibility determinations and weighing the evidence, because he provides no specifics other than to claim that the court "gave considerable weight to Gibbs' opinion." Aplt. Opening Br. at 30. We understand this as a reference to Gibbs's opinion that English's second self-removal was not protected under the MA, an opinion with which English vehemently disagrees. But the district court did not weigh Gibbs's opinion on that matter; the court instead explained (correctly) that the relevant inquiry was whether Gibbs subjectively believed that English's explanation was not objectively reasonable, as the MA requires. "Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of

7

credibility." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169-70 (10th Cir. 2007). "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Id.* at 1170 (internal quotation marks omitted). Thus, whether Gibbs's opinion was wrong is beside the point. So too are English's contentions that Gibbs considered the wrong section of the MA, that Gibbs was not the proper SBA official to review the self-removal, and that Gibbs and the SBA violated the agency's Standard Operating Procedure for supervisors handling allegations of harassing conduct.

Likewise, the district court properly rejected the argument in English's Rule 59(e) motion that pretext was shown by Gibbs's denial that he had seen English's April 2016 letter explaining why he had invoked self-removal. Not only is there no evidence that the denial was false, but even if there was a false denial, we are not persuaded by English's argument that a false denial would show pretext.

We also reject English's contention that because defendants subjected him to "vicarious retaliatory harassment" through Vigil and Gibbs that culminated in the termination of his employment, defendants are "automatic[ally] liab[le] . . . and . . . have no affirmative defense." Aplt. Opening Br. at 7-8. In support of this contention he cites *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and its companion case, *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Both concerned cases in which an employee had been subjected to sexual harassment by supervisors. The question was whether the employer could escape vicarious liability

8

(for the supervisors' misconduct) in certain circumstances.  The Supreme Court recognized an affirmative defense for employers where "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and the "employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer."  *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.  But that defense is not "available . . . when the supervisor's harassment culminates in a tangible employment action, such as discharge."  *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 808.  The important point for our purposes is that the presence of a tangible employment action did not eliminate the need to prove discrimination or retaliation.  The *Ellerth/Faragher* defense is irrelevant where, as here, a plaintiff fails to establish racial or retaliatory harassment in the first place.

English further asserts that the district court did not address the 30-day suspension.  He is mistaken.  *See* R. Vol. IV at 16 (applying the analysis of English's termination to, among other alleged adverse actions, the "30-day suspension").[3]

---

[3] To the extent we have not addressed any other arguments set forth in English's appellate briefs, it is because either the district court provided an adequate and correct analysis, English did not adequately present them in his opening brief, *see Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (explaining that "we routinely . . . decline[] to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief"), or English presented them for the first time in his reply brief, *see Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 676 n.9 (10th Cir. 2016) ("We generally do not consider arguments raised for the first time in a reply brief.")

9

## IV.  CONCLUSION

We affirm the district court's judgment and the court's order denying English's Rule 59(e) motion.  We grant English's motion to proceed on appeal without prepayment of fees or costs, but we remind him that he is obligated to pay the full amount of the filing and docketing fees to the United States District Court for the District of Colorado.  *See* 28 U.S.C. § 1915(a)(1) (excusing only *prepayment* of fees).

Entered for the Court

Harris L Hartz
Circuit Judge