**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**April 27, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

DARREN HERRERA; PAULA GARCIA,

    Plaintiffs - Appellants.

v.

CITY OF ESPANOLA, a municipality;
JANE ROES 1-3 and JOHN DOES 1-2, in
their individual capacities,

    Defendants - Appellees.

No. 21-2030

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:20-CV-00538-KWR-SCY)**
_____

Richard Rosenstock (Jamison Barkley with him on the briefs), Santa Fe, New Mexico, for Plaintiffs – Appellants.

Jessica L. Nixon, Robles, Rael & Anaya, P.C. (Douglas E. Gardner with her on the brief), Albuquerque, New Mexico, for Defendants – Appellees.
_____

Before **HOLMES**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

    Darren Herrera and Paula Garcia (collectively "Appellants") purchased a home in

the City of Espanola, New Mexico (the "City"). At the time Appellants purchased the

home, the existing owner, Charlotte Miera, was not current on her water and sewer bill. Although the City initially provided water service to Appellants, it discontinued that service in February 2017, and declined to recommence it until someone paid Ms. Miera's water and sewer bill. For over three years, Appellants routinely contacted the City requesting water service. The City consistently told Appellants that it would not recommence water service until someone paid Ms. Miera's bill.

In June 2020, Appellants initiated this action, raising claims under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act ("NMTCA") based on the City's refusal to provide them water service unless someone paid Ms. Miera's bill. In the Complaint, Appellants also advance § 1983 claims against unidentified City employees in their individual capacities. The City filed a Federal Rule of Civil Procedure 12(b)(6) motion, arguing the statute of limitations had elapsed before Appellants filed their action. Although Appellants conceded a three-year statute of limitations governed their § 1983 claims and a two-year statute of limitations governed their NMTCA claim, they argued the limitations period had not expired on their claims because the City repeatedly denied their requests for water service between February 2017 and February 2020. They expressly relied on the continuing violation doctrine to extend the limitations period, and also argued facts consistent with the related repeated violations doctrine.

The district court granted the City's motion to dismiss, concluding (1) Appellants' claims accrued no later than March 2017; (2) the continuing violation doctrine was not available within the § 1983 or NMTCA contexts; and (3) even if the continuing violation doctrine was available in the § 1983 or NMTCA contexts, it would not save Appellants'

claims because Appellants suffered only a continuing injury from the City's initial alleged wrongful act of terminating water service. The district court did not consider whether the repeated violation doctrine was applicable.

On appeal, Appellants advance arguments under the continuing violation and repeated violation doctrines. We affirm in part, vacate in part, and reverse in part. We agree with the district court that Appellants' action first accrued no later than March 2017. Further, although we hold that the continuing violation doctrine is available within the § 1983 context, we also agree with the district court that it does not save Appellants' § 1983 claims against the City or their NMTCA claim. However, Appellants' § 1983 claims against the City premised on the City's alleged policy of conditioning water service to new property owners on the payment of bills owed by prior property owners is not time-barred under the repeated violation doctrine and our decision in *Hamer v. City of Trinidad*, 924 F.3d 1093 (10th Cir. 2019). Further, as to the § 1983 claims against the individual defendants in their individual capacities, no Rule 12(b)(6) motion raising a statute of limitations defense pended before the district court where Appellants had yet to identify and serve the individual defendants.

## I.    BACKGROUND

### A.    *Factual Allegations*

This case comes to us following the district court's grant of the City's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Therefore, we take the following allegations from the Complaint as true. *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

3

In 2015, Appellants started renting a mobile home at 1106 North Riverside Drive, Espanola, New Mexico, "from the family of Charlotte Miera." App. at 8. Appellants rented the mobile home through December 2016. During the rental period, the City sent bills for water and sewer service to the 1106 North Riverside Drive residence, addressing the bills to Ms. Miera. Appellants, through an arrangement with their landlords, would review the water bills and send a member of Ms. Miera's family money for their water usage. Appellants allege they mailed payments to Ms. Miera's family member in accordance with this arrangement. As of November or December 2016, however, there was an unpaid balance of $1,760 on Ms. Miera's water account.

On December 1, 2016, the City terminated water service to the 1106 North Riverside Drive residence. Shortly after the termination of service, Appellants purchased the home from Ms. Miera. On December 22, 2016, Appellants submitted a "Utility Permit Application" to the City and provided the City with deposits for water service and sewer service. The City created a new account in Appellants' names, closed Ms. Miera's account with an outstanding balance of $1,760, and recommenced water service to 1106 North Riverside Drive. Appellants received their first water bill, which was due on February 20, 2017. [1]

---

[1] In April 2020, the City mailed a water bill for $1,951 to 1106 North Riverside Drive, addressed to Ms. Miera. With the exception of the bill in February 2017 addressed to Appellants, the City sent monthly water bills to 1106 North Riverside Drive between 2017 and May 2020, all addressed to Ms. Miera.

All, however, was not well with the water service to 1106 North Riverside Drive. On February 13, 2017, Appellants "discovered" the City had turned off water service to the residence. *Id.* at 10. Mr. Herrera went to the City Water Department that day to investigate the reason for discontinuation of service. A Water Department employee, identified in the Complaint as a Jane Roe defendant, advised Mr. Herrera that water service had been discontinued because of Ms. Miera's overdue bill. The employee further advised that water service would not be restored until the City received $1,760 to cover the outstanding bill. The employee also provided Mr. Herrera with a "Termination Order" and instructed him to sign the document to receive a partial refund of his deposits for water and sewer service. Mr. Herrera signed the "Termination Order" and provided the 1106 North Riverside Drive address as the location where the City could send Appellants a partial refund of their deposit.

On March 1, 2017, Mr. Herrera spoke with City employees at the Water Department, identified as additional Jane Roe and John Doe defendants. During this conversation, Mr. Herrera objected to the termination of service, claiming it violated his rights. The City employees advised Mr. Herrera the City would not recommence water service to 1106 North Riverside Drive until the City received payment on the balance of Ms. Miera's bill. In April, May, July, November, and December of 2017, Mr. Herrera again contacted the Water Department, each time being told that water service would not recommence until someone paid Ms. Miera's bill.[2] In January

---

[2] Sometime prior to December 2017, Ms. Miera passed away.

2018, Mr. Herrera called the Water Department manager about the termination of service, but he was able only to leave a voice message and never received a return call from the manager. In July 2018, Mr. Herrera contacted an employee at City Hall who informed him the City would review the file pertaining to water service at 1106 North Riverside Drive. Having not received an update by January 2019, Mr. Herrera again contacted City Hall. This time, a City employee informed him that the account records were stored in boxes and it would take some time to locate the records for review. Beginning in February 2019 and running through October 2019, Appellants called City Hall once or twice a week to inquire about the review of their account file and the reinstatement of water service. In September and October 2019, an employee at City Hall informed Appellants the file for their account could not be located. Ever persistent, Appellants again contacted City Hall in November 2019 and February 2020, being told both times that water service would not be reinstated until the City received payment on Ms. Miera's outstanding bill.

In February 2020, Appellants retained counsel, who sent the City a letter demanding the reinstatement of water service. Initially, counsel's letter did not result in the City restoring water service to 1106 North Riverside Drive. However, in March 2020, the State of New Mexico issued a public health order in connection with COVID-19 that precluded the termination of utility services based on unpaid bills. In accord with the public health order, the City reinstated water service to 1106 North Riverside Drive, on March 18, 2020, more than three years after terminating service.

### B.    Procedural History

On June 4, 2020, Appellants commenced this action. In their Complaint, Appellants allege "water service is an essential life service for persons who have no well or other source of running water." *Id.* at 8. They further allege the City provides water service to residents and New Mexico law prohibits a municipality from shifting a prior owner's unpaid utility bill to a new owner and further prohibits the arbitrary denial of service, only permitting a municipal unit to terminate water service if the account holder is delinquent in payment. Appellants additionally allege the City (1) failed to train its employees on the rights of citizens to water and the limitations on the termination of water service and (2) has an unwritten practice of forcing new owners to pay outstanding water bills from prior owners/account holders at an address. In their Complaint, Appellants advance four causes of action: (1) a § 1983 claim alleging Fourteenth Amendment procedural due process violations by all defendants, (2) a § 1983 claim alleging Fourteenth Amendment substantive due process violations by all defendants, (3) a § 1983 claim alleging Fourteenth Amendment equal protection violations by all defendants, and (4) a NMTCA claim against the City.

The City moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing the statute of limitations had elapsed before Appellants commenced their action. In support of this argument, the City contended the Appellants' action accrued no later than March 1, 2017, when Mr. Herrera informed the City that the termination of water service violated Appellants' rights. The City's Motion to Dismiss Plaintiffs' Complaint as Barred by the Statute of Limitations, however, focused exclusively on the statutes of

limitations and did not contend, for instance, that Appellants failed to state the elements of a cause of action or lacked a property interest in access to water service.

Appellants responded by arguing each refusal by the City to reinstate water service constituted a "discrete" act and a new violation of their rights that restarted the statute of limitations or, alternatively, that the City's "repeated" decisions to deny water service violated their rights and permitted them to pursue their claims even if their causes of action accrued by March 1, 2017.[3] *Id.* at 36–38, 40–41, 46–47, 51, 53, 55; *see also id.* at 53 ("Plaintiffs have alleged repeated acts of []unlawful conduct occurring during the limitations period."). Appellants sought damages "for acts taken by [the City] that occurred within the three years prior to filing of the Complaint on June 4, 2020, not merely for harm that was a consequence of the February 2017 termination of their service." App. at 37. And they alleged that "Defendant's repeated denial of municipal water service to them during those three years violated their constitutional rights to due process and to equal protection of the laws." *Id.*

The district court granted the City's motion to dismiss, holding Appellants' action was untimely. The district court concluded Appellants' action accrued no later than March 1, 2017, when Mr. Herrera informed the City that it violated his rights by

---

[3] Appellants did not raise any argument specific to their failure-to-train allegations. In fact, Appellants' response to the motion to dismiss made no mention of their failure-to-train allegations. Likewise, Appellants' Opening Brief on appeal makes no mention of their failure-to-train claim. Accordingly, Appellants have abandoned their failure-to-train claim. *See Stender v. Archstone-Smith Operating Tr.*, 910 F.3d 1107, 1117 (10th Cir. 2018) (treating claims not mentioned on appeal as abandoned).

terminating his water service. The district court then applied a three-year statute of limitations to the § 1983 claims and a two-year statute of limitations to the NMTCA claim to conclude that, absent tolling, Appellants' action filed on June 4, 2020, was untimely. The district court further determined that New Mexico does not recognize any tolling doctrines relative to NMTCA claims. And the district court concluded the continuing violation doctrine was not available within the § 1983 context. As an alternative holding, the district court concluded that even if the continuing violation doctrine were available within the § 1983 context, it would not save Appellants' claims because, although Appellants suffered a continuing harm after March 1, 2017, the Complaint did not contain allegations capable of demonstrating that the City committed new violations after this date. Based on this reasoning, the district court dismissed Appellants' action with prejudice without discussing the repeated violations doctrine. This dismissal applied both to Appellants' claims against the City and their claims against the City employees in their individual capacities, none of whom had been identified or served. Appellants timely appealed.

## II.    DISCUSSION

Our analysis proceeds in five parts. First, we outline several basic principles regarding the statute of limitations in the context of a § 1983 action, and where a defendant raises a limitations defense through a Rule 12(b)(6) motion. Second, we announce the applicable standard of review—a matter that the parties dispute in part. Third, we assess when Appellants' causes of action first accrued, concluding the causes of action accrued no later than March 2017. Fourth, we explain the two equitable

9

doctrines that might impact the limitations period here and conclude both the continuing violation doctrine and the repeated violation doctrine can be applied within the § 1983 context. Fifth, and finally, we analyze whether the continuing violation doctrine or the repeated violation doctrine saves any of Appellants' claims.

### A.    The Statute of Limitations, § 1983 Actions, & Rule 12(b)(6) Motions

Congress did not provide a statute of limitations for actions brought under § 1983. *Arnold v. Duchesne Cnty.*, 26 F.3d 982, 983–84 (10th Cir. 1994). Instead, a federal court looks to the law of the forum state to determine the applicable statute of limitations for a § 1983 action. *See id.* at 984. Typically, this entails looking toward the state statute of limitations for personal injury claims. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014). Here, the parties correctly agree that Section 37-1-8 of the New Mexico Annotated Statutes governs and provides a three-year limitations period for the § 1983 claims. *See id.* ("[F]or § 1983 claims arising in New Mexico the limitations period is three years, as provided in New Mexico's statute of limitations for personal-injury claims.").[4]

Determining the accrual date of a § 1983 action, however, "is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388

---

[4] For purposes of Appellants' NMTCA claim, the parties also correctly agree a two-year statute of limitations period applies. *See Maestas v. Zager*, 152 P.3d 141, 144 (N.M. 2007) ("Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death." (quoting N.M. Stat. Ann. § 41-4-15(A) (emphasis omitted))).

(2007). Because no federal statutory provision governs how to determine the accrual date, courts look to "federal rules conforming in general to common-law tort principles." *Id.* "Under those principles, it is 'the standard rule that accrual occurs when the plaintiff has a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). Put another way, "[a] civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action," *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (quotation marks omitted), or "when the plaintiff's 'right to resort to federal court was perfected.'"[5]

---

[5] We note that "[a]n accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed." *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (quoting *Manuel v. Joliet*, 137 S. Ct. 911, 920 (2017)). On appeal, the City contends that where it discontinued water service to Appellants on February 13, 2017, Appellants lacked a property interest in water from that day forward. The City further argues that "[w]ithout a property interest protected by the Fourteenth Amendment of the United States Constitution, the City did not, and could not have, deprived [Appellants] of their rights by denying the alleged verbal requests for water utility service." Response Br. at 17. But the City failed to advance any argument based on the lack of a property interest in its motion to dismiss, either relative to the statute of limitations defense or relative to a standalone failure-to-state-a-claim argument. Indeed, neither the phrase "property interest" nor any reference to the Fourteenth Amendment appears in its motion to dismiss. *See* App. at 25–34. And to the extent the City's reply brief during the motion to dismiss proceedings might be read as alluding to a property interest argument, a contention central to a moving party's affirmative argument for dismissal raised for the first time in a reply brief is waived. *See Garcia v. Int'l Elevator Co., Inc.*, 358 F.3d 777, 781 (10th Cir. 2004) (citing *United States ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1279 (10th Cir. 2001) for proposition that "an argument first raised in a reply brief in support of a motion filed with the district court was waived"); *see also Arbogast v. Kan., Dep't of Labor*, 789 F.3d 1174, 1183 n.4 (10th Cir. 2015). In this sense, where the City argued Appellants' claims accrued outside the limitations period and the accrual analysis begins with identification of the right infringed, the City, by not raising a property interest argument in their 12(b)(6) motion, accepted Appellants'

*Bergman v. United States*, 751 F.2d 314, 316 (10th Cir. 1984) (quoting *Oppenheim v. Campbell*, 571 F.2d 660, 662 (D.C. Cir. 1978)).[6]

The statute of limitations is an affirmative defense that must be raised by the defendant. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). Typically, facts must be developed to support dismissing a case based on the statute of limitations. *Id.* But "[a] statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (internal quotation marks omitted). If from the complaint, "the dates on which the pertinent acts occurred are not in dispute, [then] the date a statute of limitations accrues is . . . a question of law" suitable for resolution at the motion to dismiss stage. *Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1050 (10th Cir. 1995); *see also Fernandez*, 883 F.3d at 1299 (stating that a court may grant a motion to dismiss based on a statute of limitations defense only "when the complaint itself

---

contention that they had a property interest in water service. Accordingly, argumentation about whether Appellants have a property interest in the continuation and/or resumption of water service and whether the Appellants adequately requested water service, or needed to do so, to have a property interest, are matters left for a subsequent stage of litigation because they were not properly before the district court on the City's Rule 12(b)(6) motion to dismiss.

[6] For purposes of Appellants' NMTCA claim, New Mexico law similarly instructs that "[o]nce a plaintiff has discovered his or her injury and the cause of that injury, the statute of limitations begins to run. 'It is not required that all the damages resulting from the negligent act be known before the statute of limitations begins to run.'" *Maestas*, 152 P.3d at 148 (quoting *Bolden v. Vill. of Corrales*, 809 P.2d 635, 636 (N.M. Ct. App. 1990)).

admits all the elements of the affirmative defense by alleging the factual basis for those elements").

### B.    *Standard of Review*

The parties agree regarding the basic, overarching standard applicable to our review of a Rule 12(b)(6) dismissal, but disagree regarding the standard of review governing the district court's conclusion that Appellants' action accrued no later than March 1, 2017. On this latter, more specific matter, Appellants contend de novo review applies, while the City contends clear error review applies. *Compare* Response Br. at 13 ("[T]he date when the applicable statute of limitations accrued is a factual question reviewed under a clearly erroneous standard."), *with* Reply Br. at 2–3 (arguing the City makes "a clear misstatement of the law" when arguing for clearly erroneous standard and that "no deference" is due to the district court when reviewing a ruling on a motion to dismiss). We set forth the general standard of review before addressing the standard for reviewing the more specific matter in dispute.

We review a district court's grant of a motion to dismiss de novo. *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014). "[A]ll well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Moore*, 438 F.3d at 1039 (ellipsis omitted). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

13

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On the more specific matter regarding the standard of review of the district court's determination regarding the accrual date, our case law could not be more settled. To obtain dismissal at the Rule 12(b)(6) stage based on the statute of limitations, the allegations on the face of the complaint surrounding the date of accrual must "make clear that the right sued upon has been extinguished." *Sierra Club*, 816 F.3d at 671 (quotation marks omitted). And "[w]hether a court properly applied a statute of limitations and the date a statute of limitations accrues under undisputed facts are questions of law we review de novo." *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).

In opposition to these straightforward propositions of law, the City cites an unpublished decision in *D.J. Simmons Inc. v. Broaddus*, 116 F. App'x 964 (10th Cir. 2004) (unpublished). In addition to being nonprecedential, that decision is not even arguably on point. To be sure, *D.J. Simmons* states the basic proposition that "[w]e review findings of fact under a clearly erroneous standard." *Id.* at 966. But our application of the clear error standard in *D.J. Simmons* occurred within the context of reviewing a district court's bench trial findings on whether the terms of several contracts permitted prejudgment interest, as well as the district court's decision to award postjudgment interest. *Id.* These matters, which occurred near the end of the litigation and after the presentation of evidence, are far afield from the resolution of a Rule 12(b)(6) motion presenting a question of law regarding the statute of limitations based on the face

14

of the complaint. Our clear precedent requiring de novo review in the latter circumstance permits no meritorious dispute. *See Nelson*, 419 F.3d at 1119.

### C.    Appellants' Action First Accrued No Later than March 1, 2017

Although we reject the City's argument regarding the standard of review as to the accrual date of Appellants' action, we, like the district court, conclude the Appellants' action first accrued no later than March 1, 2017. Following establishment of Appellants' water account for 1106 North Riverside Drive, the City terminated water service sometime on or before February 13, 2017. On that date, Mr. Herrera went to the Water Department and learned that someone would need to pay the outstanding balance on Ms. Miera's account before the City would resume water service to 1106 North Riverside Drive. Arguably, where Appellants contend the City's discontinuation and conditioning of water service on the payment of Ms. Miera's bill violated their rights, their action accrued upon learning of the City's basis for termination of service. But even if the action did not first accrue on February 13, 2017, it certainly first accrued on March 1, 2017, when Mr. Herrera informed the City that it had violated his rights by discontinuing water service based on Ms. Miera's unpaid bill. *See Smith*, 149 F.3d at 1154 ("A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" (quoting *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994) (citations and other internal quotation marks omitted))); *see also*

*Maestas v. Zager*, 152 P.3d 141, 148 (N.M. 2007) (stating similar rule on accrual of action for purposes of NMTCA claim).

Appellants, however, did not file this action until more than three years later on June 2020, beyond the two-year statute of limitations for initiation of their NMTCA claim and the three-year limitations period for commencement of their § 1983 claims. Therefore, the burden falls on Appellants to identify a theory that allows them to overcome the statutes of limitations and thereby render their claims timely. *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); *see also Slusser v. Vantage Builders, Inc.*, 306 P.3d 524, 531–32 (N.M. Ct. App. 2013) (placing burden on plaintiff seeking to toll statute of limitations). In an effort to satisfy their burden, Appellants rely upon the continuing violation doctrine or, in the alternative, the repeated violation doctrine. We first explain the contours of the two doctrines and their availability in the § 1983 context, beginning with the continuing violation doctrine. We then consider each doctrine's applicability to Appellants' claims, starting with their § 1983 claims and then turning to their NMTCA claim. Ultimately, we conclude both doctrines are available and that application renders some, but not all, of Appellants' claims timely.

### D.     *Limitations Doctrines*

### 1.     **The Continuing Violation Doctrine**

#### a.     *Background on the doctrine*

The continuing violation doctrine is an "equitable principle." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). The continuing violation doctrine was first recognized by the Supreme Court in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101

16

(2002), within the context of a hostile work environment claim based in Title VII of the Civil Rights Act of 1964.[7] Somewhat unique to a hostile work environment claim is the principle that no single discrete act gives rise to a cause of action because the claim is "based on the cumulative effect of individual acts." *Id.* at 115. Because "the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim" such that if any acts occurred within the statute of limitations, the entire course of conduct can be pursued in the action. *Id.* at 118. Put another way, the continuing violation doctrine "applies when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that *collectively constitute one unlawful act*, as opposed to conduct that is a discrete unlawful act." *Hamer*, 924 F.3d at 1098 (emphasis added) (internal quotation marks omitted). "An important caveat to the continuing violation doctrine, however, is that it is triggered by continual unlawful acts, not by continual ill effects from the original violation." *Id.* at 1099 (internal quotation marks omitted).

  *b.  Availability in § 1983 context*

  The Supreme Court has "long recognized that [§ 1983] was not meant to effect a radical departure from ordinary tort law." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). In this vein, "the time at which a § 1983 claim accrues 'is a question of federal law,'

---

  [7] Although the Supreme Court explained and applied the principles rendering the hostile work environment claim before it timely, the Court did not use the term "continuing violation doctrine." *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002). This circuit used the phrase "continuing violation doctrine" as early as *Pike v. City of Mission, Kan.*, 731 F.2d 655, 660 (10th Cir. 1984), and more recently in *Hamer v. City of Trinidad,* 924 F.3d 1093, 1098–99 (10th Cir. 2019).

'conforming in general to common-law tort principles.'" *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Meanwhile, the continuing violation doctrine is a "tort principle" that "is a general principle of federal common law." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citing *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (collecting cases and describing the "doctrine of 'continuing violation'" as "a general principle of federal common law" and "not anything special to section 1983"); Martin A. Schwartz, *Section 1983 Litigation Claims and Defenses* 12.03 (4th ed. Supp. 1 2018); *Civil Actions Against the United States, Its Agencies, Officers and Employees* § 1:31 (2d ed. 2017)); *see also Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017) ("The continuing violation doctrine is a federal common law doctrine governing accrual.").

To displace a generally applicable principle of federal common law, Congress must speak to the issue when crafting the pertinent legislation:

> Just as longstanding is the principle that "statutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952); *Astoria Fed. Savings & Loan Assn. v. Solimino*, 501 U.S. 104, 108 (1991). In such cases, Congress does not write upon a clean slate. *Astoria*, 501 U.S. at 108. In order to abrogate a common-law principle, the statute must "speak directly" to the question addressed by the common law. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978); *Milwaukee v. Illinois*, 451 U.S. 304, 315 (1981).

*United States v. Texas*, 507 U.S. 529, 534 (1993). But no language in § 1983 or any other provision governing the commencement of actions under § 1983 speaks directly to the applicability of the continuing violation doctrine, no less displaces the doctrine. *See, e.g.*,

18

42 U.S.C. § 1983. In fact, 42 U.S.C. § 1988(a) expresses a preference *for* application of the common law where the statutes governing civil rights actions are silent on a matter addressed by the common law. Accordingly, it follows that the continuing violation doctrine, as a general principle of the federal common law, is available to a § 1983 litigant. Such a conclusion is consistent with the seemingly uncontroverted authority from other circuits holding the continuing violation doctrine is available within the § 1983 context. *DePaola*, 884 F.3d at 487; *Sherman v. Town of Chester*, 752 F.3d 554, 567 (2d Cir. 2014); *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 973–74 (9th Cir. 2010); *see also Heath*, 850 F.3d at 740 (collecting cases and stating, "[a] number of circuits therefore have applied *Morgan* when determining whether a section 1983 claim alleges a continuing violation"). Therefore, Appellants may seek to rely on the continuing violation doctrine in an effort to overcome the statute of limitations on their § 1983 claims. [8]

## 2.    The Repeated Violation Doctrine

### a.    *Background and availability in § 1983 context*

The repeated violation doctrine is a variation on the continuing violation doctrine. The repeated violation doctrine:

---

[8] Holding that the continuing violation doctrine is available in the § 1983 context is not incompatible with our own precedent. We have suggested on multiple occasions that the question of whether the continuing violation doctrine is available to a § 1983 litigant is an open question in our circuit. *Schell v. Chief Just. & Justs. of Okla. Sup. Ct.*, 11 F.4th 1178, 1191 n.6 (10th Cir. 2021); *Vasquez v. Davis*, 882 F.3d 1270, 1277 (10th Cir. 2018); *Colby v. Herrick*, 849 F.3d 1273, 1280 (10th Cir. 2017); *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011) (citing *Parkhurst v. Lampert*, 264 F. App'x 748, 749 (10th Cir. 2008) (unpublished)). However, in

"*divides* what might otherwise represent a single, time-barred cause of action into several separate claims, at least one of which accrues within the limitations period prior to suit." That division, in turn, "allows recovery for only that part of the injury the plaintiff suffered during the

---

*Mercer-Smith v. New Mexico Children, Youth & Families Department*, 416 F. App'x 704, 712 (10th Cir. 2011) (unpublished), a panel of this court rejected the availability of the continuing violation doctrine within the § 1983 context. *Mercer-Smith* does not bind us given its unpublished nature. Further, *Mercer-Smith* relied on *Hunt v. Bennett*, 17 F.3d 1262, 1265 (10th Cir. 1994), for the proposition that the continuing violation doctrine "does not 'extend . . . to a § 1983 claim.'" *Mercer-Smith*, 416 F. App'x at 712 (quoting *Hunt*, 17 F.3d at 1265) (ellipsis in original). But the full quote from *Hunt* reads "Hunt cites no case in which a court has extended the continuing violation doctrine to a § 1983 claim." 17 F.3d at 1266. A court noting a party's failure to cite adequate authority to support a proposition of law differs greatly from rejecting that proposition of law following analysis of the merits of the proposition. And *Hunt* ultimately concluded that to the extent the continuing violation doctrine might be available in the § 1983 context, the plaintiff's complaint failed to allege sufficient facts to make out a conspiracy which could support the continuing violation doctrine, not that the continuing violation doctrine was unavailable in the § 1983 context. *Id.*

Additionally, although neither the City nor Appellants cite *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1507–08 (10th Cir. 1997), in that case, within the context of a claim arising under 42 U.S.C. § 1981, we suggested the continuing violation doctrine was available only where a plaintiff had to exhaust administrative remedies before filing suit. If applied to the § 1983 context, *Thomas* could be read as typically precluding the availability of the continuing violation doctrine because, except in contexts not relevant to this case, a § 1983 plaintiff need not exhaust administrative remedies before bringing suit, *see Porter v. Nussle*, 534 U.S. 516, 523 (2002) ("Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court."). But, prior to *Thomas*, we discussed the availability of the continuing violation doctrine in an action alleging a conspiracy in which the plaintiff was not required to exhaust his administrative remedies before bringing suit. *Robinson v. Maruffi*, 895 F.2d 649, 654–55 (10th Cir. 1990); *see also Hunt*, 17 F.3d at 1266 (recognizing that *Robinson* applied continuing violation doctrine in context of claim raising conspiracy allegation). And "in cases of conflicting circuit precedent our court follows earlier, settled precedent over a subsequent deviation therefrom." *United States v. Hansen*, 929 F.3d 1238, 1256 (10th Cir. 2019) (quotation marks omitted). Furthermore, we decided *Thomas* before the Supreme Court decided *National Railroad Passenger Corp.*, 536 U.S. 101, a decision that did not condition the availability of the continuing violation doctrine on a plaintiff's need to exhaust administrative remedies.

20

> limitations period"; recovery for the part of the injury suffered outside
> of the limitations period, however, remains unavailable.

*Hamer*, 924 F.3d at 1100 (first quoting Kyle Graham, *The Continuing Violations*

*Doctrine*, 43 Gonz. L. Rev. 271, 280 (2008), then quoting *White v. Mercury Marine Div.,*

*of Brunswick, Inc.*, 129 F.3d 1428, 1430 (11th Cir. 1997)). To invoke the repeated

violation doctrine, a plaintiff must identify a discrete act occurring within the statute of

limitations period and not just the continuing effect of, or continuing harm from, a

discrete act that occurred outside the limitations period. *See id.* at 1101–02 (citing

illustrations of repeated violation doctrine from Graham, *The Continuing Violation*

*Doctrine*, 43 Gonz. L. Rev. at 280). Importantly, under the repeated violation doctrine,

each new violation restarts the statute of limitations, but damages are available only for

the violations occurring within that limitations period. *See id.* at 1100.

Unlike with the continuing violation doctrine, this court has never called into

question application of the repeated violation doctrine in the context of a § 1983 claim.

This is unsurprising because the repeated violation doctrine stands for the straightforward

proposition that discrete § 1983 violations occurring within the statute of limitations are

actionable, even if claims for prior, similar violations are time barred. *See Hamer*, 924

F.3d at 1107. Thus, the repeated violation doctrine is available in the § 1983 context. *Id.*

We now consider whether Appellants have adequately preserved their repeated

violation argument in the district court and on appeal. As we now explain, the

Appellants argued facts that put the issue fairly before the district court. On appeal,

the Appellants argue similar facts and reference the "repeated violations doctrine."

21

Under these circumstances, particularly where the City has not argued waiver, we conclude the repeated violation doctrine is properly before us.

>    b.    *Preservation*

In the district court, the Appellants did not refer to the repeated violation doctrine by name. A careful review of their arguments, however, reveals they argued it in substance. In response to the City's motion to dismiss, the Appellants asserted they were entitled to damages:

> for *acts* taken by Defendant that occurred within three years prior to the filing of the Complaint on June 4, 2020, not merely for harm that was a consequence of the February 2017 termination of their service. Plaintiffs contend that Defendant's repeated denial of municipal water service to them *during those three years* violated their federal constitutional rights to due process and to the equal protection of the law.

App. at 37. From this and other portions of their argument, it is apparent Appellants viewed each refusal to reinstate water service as a discrete violation. *See id.* at 38 (arguing that the initial termination of water service was "a separate and discrete action from Defendant's subsequent actions undertaken months later when Defendant acted to unlawfully deny [Appellants] water service"); *see also Hamer*, 924 F.3d 1100–02 (explaining the distinction between damages available under the continuing violation theory and the repeated violation theory). Indeed, Appellants pointed the district court to *National Railroad Passenger Corporation*'s admonition that "[t]he existence of past acts and a plaintiff's prior knowledge of their occurrence, however, does not bar a plaintiff from filing claims about related discrete acts so long as the acts are independently unlawful and claims addressing those acts are themselves

22

timely filed." App. at 47–48 (citing *Nat'l R.R. Passenger Corp.,* 536 U.S. at 112). Like the Appellants, the Supreme Court in *National Railroad Passenger Corp.* did not refer to the repeated violations doctrine by name. Yet, the Court distinguished the hostile work environment claim, which arose only after continuing acts were combined, from claims for discrete Title VII violations that arose upon a single wrongful act. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 115–16. The Court held "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. In contrast, the hostile work environment claim fell within the continuing violation doctrine because the separate acts combined to form a single violation. *Id.* at 115.

Here, Appellants have adequately advanced the argument in the district court that each new refusal to provide water service constitutes a discrete violation and triggers a new clock for filing the action. *See Hamer*, 924 F.3d at 1101 (concluding plaintiff's argument was consistent with the repeated violation doctrine despite plaintiff's failure to designate the argument as such). Yet, the district court did not expressly consider whether the repeated violation doctrine saved any aspect of any of Appellants' § 1983 claims. But it did rule that: "[Appellants'] ensuing requests and efforts over the following years to reconnect the water, obtain further information about the problem, and Defendants' alleged continued refusal to do so do not constitute new injuries but rather continued effects from the initial shut off." App. at 78. Thus, while the district court did not label it as a repeated violation argument, it did consider and reject Appellants' argument that each refusal constituted a new

23

violation with its own limitations period. For these reasons, we are convinced Appellants adequately raised the repeated violation doctrine before the district court.

As to their § 1983 claims, Appellants also raised a repeated violation doctrine argument in their Opening Brief on appeal. Specifically, Appellants cited to *Hamer* and explained the repeated violation doctrine. Then in a section titled "The Continuing Violation Doctrine or the Repeated Violations Doctrine Apply to this Case and Plaintiffs' Claims were Timely Filed," Appellants challenged the district court's rejection of the premise "that the acts taken by the City [during the limitations period] were 'separate unlawful acts.'" Opening Br. at 21 (quoting district court opinion). After arguing for application of the continuing violation doctrine, the Appellants advocated in the alternative for implementation of the repeated violations doctrine, stating: "Likewise, each denial of a request for water service was a separate, unlawful act by an entity that 'had the power to do something" about Plaintiffs' condition." *Id.* at 23 (quoting *Heard,* 253 F.3d at 318 (applying continuing violation doctrine to plaintiff's § 1983 claim for deliberate indifference to prisoner's serious medical condition)). Although Appellants cited a case from the Seventh Circuit applying the continuing violation doctrine, they argued the district court should have applied "the continuing violation doctrine or the repeated violation doctrine." Opening Brief at 24. Under these circumstances, Appellants have adequately preserved their repeated violations doctrine argument.[9]

---

[9] The City does not contend in its Response Brief that Appellants waived or forfeited the repeated violation doctrine argument. Accordingly, even assuming

### E.    Application to Appellant's § 1983 Claims Against the City

### 1.    Continuing Violation Doctrine

Although we hold that a § 1983 litigant may rely on the continuing violation doctrine to overcome the statute of limitations where the first in a series of acts giving rise to a single violation occurs outside of the limitations period, the doctrine does not save Appellants' claims here. This is because Appellants' claims are not premised on a series of actions amounting to a single violation of their rights. Rather, Appellants contend that each time the City denied one of their requests, the denial constituted a separate violation. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 114 (reversing Second Circuit's application of the continuing violation doctrine to serial violations, as opposed to serial acts constituting a single violation). Appellants' Complaint includes the following allegations as to each of their three § 1983 causes of action:

1) "The acts and omissions of Defendants constituted a violation of Plaintiffs' due process right to receive municipal water service and their right not to be denied municipal water service in the absence of just cause." App. at 21.

2)  "Plaintiffs had a property interest in receiving municipal water service and Defendants' repeated denial of water service to Plaintiffs . . . was

---

Appellants failed to adequately raise a repeated violation doctrine argument before the district court, the City has waived the waiver such that we may consider Appellants' argument. *See Schell*, 11 F.4th at 1192 n.6 (discussing waiver of the waiver rule and noting the "failure of party to argue waiver results in waiver of initial waiver argument"). As to the individual defendants, Appellants were under no duty to preserve any argument because the individual defendants had not been named or served as of the time of the motion to dismiss.

not rationally related to a legitimate governmental interest and constituted a denial of Plaintiffs' right to substantive due process." *Id.*

3) "The conduct of Defendants in denying municipal water service to Plaintiffs because of the actions of Charlotte Miera . . . created an unfair burden on Plaintiffs in their efforts to become municipal water users." *Id.* at 21–22.

For each of Appellants' § 1983 causes of action, it is the City's initial termination of water service on February 13, 2017, that Appellants allege violated their rights. In this sense, the initial termination of service was a discrete act capable of giving rise to their claims. And under Appellants' theory of the case—that the City was not permitted to condition water service on the payment of Ms. Miera's bill—no additional act or cumulative effect of acts was needed to give rise to the claims Appellants seek to advance because the initial termination of service provided a basis for of all the elements of their claims.[10]

Further, where a defendant reaches a final decision on a matter and informs the plaintiff of such outside the statute of limitations period, we have rejected efforts by a plaintiff to rely on subsequent denials of renewed requests within the limitations period to overcome the statute of limitations. *Bergman*, 751 F.2d at 317.[11] And this makes perfect

---

[10] Notably, although such a theory might support application of the continuing violation doctrine, Appellants do not contend they acquired a property interest in water only after the City denied service for a specific number of months. Rather, Appellants argue *any* denial of service by the City based on a prior homeowner's unpaid water bill infringes their property interest.

[11] It is true that in *Bergman,* we cite to a Ninth Circuit case applying the continuing violation doctrine. *See Bergman v. United States*, 751 F.2d 314, 317 (10th Cir. 1984) (citing *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)). But we did so in support of the proposition that "[a] continuing violation is occasioned by

sense because any other rule "would, in practical effect, mean that the . . . statute would never run" as the plaintiff could always renew a request for defendant to reconsider the final decision. *Id.*

Here, the City terminated water service on February 13, 2017, and Mr. Herrera acknowledged his understanding that the reason for the termination—Ms. Miera's unpaid bill—constituted a violation of Appellants' rights on March 1, 2017. No cumulative acts were required to constitute the violation and the statute of limitations began to run. Under *Bergman,* Appellants could not restart the limitations period relative to the initial termination of water service by making repeated unsuccessful trips to the Water Department and City Hall to request the reactivation of service. And the continuing violation doctrine is inapplicable because no further acts were needed to support the claim. Therefore, Appellants are barred by the statute of limitations from seeking redress for any discrete act that occurred prior to June 4, 2017. This, however, does not spell the end of our analysis because the more limited repeated violation doctrine saves a portion of Appellants' § 1983 claims.

## 2.    Repeated Violation Doctrine

Appellants allege the City has an unwritten policy of conditioning water service to a new owner on the payment of outstanding bills for which a prior owner is

---

continual unlawful acts, not by continual ill effects from the original violation." *Id.* And we issued our decision on *Bergman* well before the Supreme Court explained the limitations of the continuing violation doctrine in *National Railroad Passenger Corp.*, 536 U.S. at 114–15, which distinguishes discrete acts constituting separate violations from cumulative acts necessary to support a single violation.

responsible. *See* App. at 20 ("Defendant City of Española maintained an unwritten custom or practice of improperly seeking to force citizens who had purchased property to pay the bills owed by a prior property owner and/or an unwritten custom or practice which permitted, condoned, or authorized the denial of municipal water service without providing notice of the right to contest the denial and without providing a hearing."). Appellants further allege the City has enforced this policy to deny water access to "numerous citizens since 2006." *Id.* And it can fairly be inferred from Appellants' Complaint that the policy informed the City's decision to terminate water service to Appellants and its numerous refusals to recommence water service thereafter. To this latter assertion, the allegations in the Complaint support the inference that the policy was in effect when the City first terminated Appellants' water service and remained in effect until at least until March 18, 2020—when the water service was recommenced due to the New Mexico public health order.

Accordingly, unlike the hostile work environment claim in *National Railroad Passenger Corp.*, Appellants challenge a series of unlawful acts each of which constitutes an alleged violation. The City terminated water service based on an allegedly unconstitutional policy, and Appellants suffered harm flowing from that decision for every day over a three-year period. There is no doubt that Appellants were aware of their claim because on March 1, 2017, Mr. Herrera informed the City that it had violated Appellants' constitutional rights by terminating water service due to Ms. Miera's unpaid bill. Thus, nothing prevented Appellants from filing a complaint asserting their § 1983 claims at that time. As a result, Appellants' § 1983

28

claim against the City is not one where the injury sued upon arose only after a series of connected events that together form a single violation of Appellants' constitutional rights. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 115. The violation occurred when the City terminated water service pursuant to an allegedly unconstitutional policy and the injury from that violation continued until the City resumed water service. These facts do not support application of the continuing violation doctrine.

Instead, Appellants' § 1983 claims are like those at issue in *Hamer*. There*,* a wheelchair user brought claims under Title II of the Americans with Disabilities Act ("ADA") based on the city's failure to provide accessible curb cuts and sidewalks. *Hamer*, 924 F.3d at 1097. At a city council meeting in April 2014, the plaintiff first notified the city that he had personally encountered numerous non-compliant sidewalks and curb cuts. *Id.* The following month, the plaintiff filed a complaint with the United States Department of Justice based on the city's violations of the ADA. *Id.* But plaintiff did not file the operative complaint until October 12, 2016. *Id.* at 1098. The district court dismissed the complaint as barred by the applicable two-year statute of limitations, and the plaintiff appealed. *Id.* at 1098–99. On appeal, we agreed with the city that the continuing violation doctrine could not save plaintiff's claim. *Id.* at 1102. We held, however, that the repeated violation doctrine permitted the plaintiff to seek damages incurred during the limitations period. *Id.* at 1107. We explained that the city commits "a 'new violation' of the ADA "each day that it fails to remedy a non-compliant service, program, or activity." *Id.* at 1105. To hold otherwise, we reasoned, would allow the city to violate the act with impunity once

29

the limitations period had expired. *Id.* at 1107. Thus, while the plaintiff could not seek damages for the entire period the offensive policy was in place, he could recover for the repeated daily violations occurring during the limitations period. *Id.*

The same result is appropriate here. Under the repeated violation doctrine and *Hamer*, Appellants can pursue their § 1983 claims to the limited extent the claims are based on the City's alleged policy, and enforcement thereof, for the three years predating Appellants' commencement of their action. The application of the repeated violation doctrine allows Appellants to obtain relief but limits their damages to the three-year period preceding initiation of the action. This avoids granting the City permission to violate the Appellants' rights with impunity and prevents prospective plaintiffs from sitting on their rights to increase the value of claims against the City.

In sum, within the context of a suit challenging a municipal policy, "[s]o long as the service, program, or activity remains non-compliant, 'and so long as a plaintiff is aware of that and remains [impacted]'" the plaintiff may pursue the claim. *Hamer,* 924 F.3d at 1107 (quoting *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002) (applying repeated violation doctrine to ongoing ADA violation)). But the plaintiff has no cause of action for "injury that occurred outside the limitations period." *Pickern,* 293 F.3d at 1137.

We recognize that some out-of-circuit cases apply the continuing violation doctrine in the context of a claim challenging a municipal policy. *See*, *e.g.*, *Lucente v. Cnty. of Suffolk,* 980 F.3d 284, 308–11 (2d Cir. 2020) (applying continuing violation doctrine to § 1983 claims based on policy of acquiescence to sexual harassment and

assault of female prisoners); *Shomo v. City of N.Y.*, 579 F.3d 176, 181–82 (2d Cir.

2009) (applying the continuing violation doctrine to § 1983 claims based on

deliberate indifference to prisoner's serious medical condition); *Gutowsky v. Cnty. of*

*Placer,* 108 F.3d 256, 259–60 (9th Cir. 1997) (applying continuing violation doctrine

to § 1983 claims based on gender discrimination in the workplace). We respectfully

disagree.

In our view, whether a policy that remains in effect may be challenged through

the continuing violation doctrine versus the repeated violation doctrine requires a

case-by-case analysis. In some cases, enforcement of the policy may accumulate into

a single injury over the course of time, permitting reliance on the continuing

violation doctrine. In other cases, however, the municipality's enforcement of the

policy will give rise to a discrete injury upon the policy's enactment or a

municipality's first enforcement of the policy against a plaintiff. In such instances, a

plaintiff has an immediate and discrete injury capable of giving rise to a cause of

action. As a result, the premise of the continuing violation doctrine—that a series of

actions eventually cumulate to give rise to a single wrong—is not applicable. *See*

*Nat'l R.R. Passenger Corp.*, 536 U.S. at 116–19.

The Second Circuit explained the fact-specific focus of the continuing

violation doctrine in *Shomo.* There, a prisoner alleged a series of actions and

inactions by prison officials that he claimed together supported his claim of

deliberate indifference. *Shomo,* 579 F.2d at 180. The court explained that "under

*Morgan*, the continuing violation doctrine can be applied when the plaintiff's claim

31

seeks redress for injuries resulting from 'a series of separate acts that collectively constitute one unlawful act,' but the doctrine cannot be applied when the plaintiff challenges conduct that is a discrete unlawful act." *Id.* at 181 (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117). The Second Circuit further admonished, "[t]hat the continuing violation doctrine *can* apply, however, does not mean it must." *Id.* at 182 (emphasis in original). It then proceeded to consider each of the plaintiff's claims individually to determine whether it was based on a single act constituting a violation, or a series of actions cumulating in a single violation. *Id.* 579 F.3d at 183–84.

The Appellants' § 1983 claims based on the City policy conditioning the provision of water service on payment of the prior account holder's arrearages arose upon the City's termination of water service. No further acts were required to constitute a violation. And each day the City failed to provide water service to Appellants constituted a separate violation that triggered a new limitations period. Thus, the claims here are properly considered under the repeated violation doctrine.

### F.    *Application to Appellants' § 1983 Claims Against the Individual Defendants*

Appellants also bring § 1983 claims against five unnamed City Water Utility Department employees in their individual capacities. In their Complaint, Appellants allege "[t]hese Defendants had the responsibility to see that municipal water service was provided to City residents, including [Appellants], in a lawful manner that comported with the requirements of the United States Constitution." App. at 7–8. Appellants allege each time they sought water service, one or more of these

individual defendants denied their request, often citing Ms. Miera's unpaid bill as the basis for denying service.

Although not raised by the parties, we question the procedural propriety of the district court dismissing the entire action, including the claims against the individual defendants in their individual capacities. At the time of the dismissal, Appellants had not identified or served the individual defendants. Thus, the individual defendants had not filed a Rule 12(b)(6) motion to dismiss. Yet, "the statute of limitations defense is an affirmative defense and is subject to waiver." *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003). And the City was not in privity with the individual defendants in their individual capacities so as to be positioned to raise the affirmative defense for the individual defendants. *See Willner v. Budig*, 848 F.2d 1032, 1034 n.2 (10th Cir. 1988) ("Government employees in their *individual* capacities are not in privity with their government employer."); *see also Spiess v. Meyers*, 483 F. Supp. 2d 1082, 1089 (D. Kan. 2007) (observing in context of discussing privity that individual defendants in individual capacity may "maintain unique interests" from their municipal employer). Accordingly, if Appellants name and serve the individual defendants, those defendants may pursue a statute of limitations defense; but it is not apparent this defendant-specific, affirmative defense was before the district court through the City's Rule 12(b)(6) motion.[12]

---

[12] We also question the ability to analyze a statute of limitations defense as to any unnamed defendant in his or her individual capacity where, until the identities of a given defendant is known, it is not possible from the face of the Complaint to determine if a specific defendant interacted with Appellants (1) only before the

But even if the City could have raised the defense for the individual defendants in their individual capacities, similar to Appellants' policy-based claim, each denial of water service represented a new and discrete rejection of Appellants' alleged right to water service. As a result, under the repeated violation doctrine, Appellants may be able to pursue claims against the individual defendants based on any denial of water service occurring within three years of when Appellants commenced their action.

### G.    Appellants' NMTCA Claim

Unlike their § 1983 claims, which Appellants argue are timely under both the continuing violation doctrine and the repeated violation doctrine, on appeal, Appellants argue that their NMTCA claim is timely only under the continuing violation doctrine. Specifically, the header discussing their NMTCA reads: "The Continuing Violation Doctrine Applies to Plaintiffs' Tort Claims." Opening Br. at 28. And Appellants, thereafter, argue "New Mexico courts apply the continuing violation doctrine to cases where a defendant engaged in 'repeated conduct over days or years' of harassment and individual acts of wrongdoing may not be separately actionable." *Id.* (quoting *Charles v. Regents of N.M. State Univ.*, 256 P.3d 29, 34 (N.M. Ct. App. 2010)). For the same reasons we hold that the continuing violation doctrine does not save Appellants' § 1983

---

limitations period, (2) only within the limitations period, or (3) both before and within the limitations period. In this sense, the allegations relevant to each individual defendant, and the tolling doctrines applicable in each instance, may vary once Appellants learn of the identities of each individual defendant. And because, if identified and served, the individual defendants may pursue a Rule 12(b)(6) motion based on the statute of limitations, we vacate, rather than reverse, the district court's dismissal of Appellants' claims as against the individual defendants.

34

claims—primarily that the claims are not premised on a series of individually unactionable occurrences that make out a violation only when combined—we also hold that the continuing violation doctrine does not save Appellants' NMTCA claim. *See Ulibarri v. N.M. Corr. Acad.*, 131 P.3d 43, 47–48 (N.M. 2006) (allowing reliance on continuing violation doctrine where claim is based on "a cumulative series of acts constituting a *single* unlawful practice" (emphasis added)).

## III.    CONCLUSION

While the continuing violation doctrine is available in the § 1983 context, it does not save Appellants' claims against the City because their allegations do not support a series of individually unactionable occurrences, which when combined, make out a single alleged violation. For the same reason, Appellants are unable to rely on the continuing violation doctrine to save their NMTCA claim. But where Appellants allege the City denied water service pursuant to a municipal policy that remained in effect during the statute of limitations period, Appellants may rely on the repeated violation doctrine to save the policy-based aspects of their § 1983 claims. Additionally, as Appellants had not identified and served the individual defendants and the individual defendants had not raised a statute of limitations defense through a Rule 12(b)(6) motion, the district court lacked a procedural basis to dismiss Appellants' action as against those defendants; thus, that aspect of the district court's order is merely vacated rather than reversed. Accordingly, we AFFIRM IN PART, VACATE IN PART, REVERSE IN PART, and REMAND for further proceedings on Appellants' § 1983 claims.