**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 15, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SANDRA VASQUEZ-GARCIA,

    Plaintiff - Appellant,

v.

CENTURION, LLC; CENTURION
CORRECTIONAL HEALTHCARE
OF NEW MEXICO, LLC; MHM
HEALTH PROFESSIONALS, INC.;
WEXFORD HEALTH SOURCES,
INC.; SUMMIT FOOD SERVICE,
LLC; ALISHA TAFOYA LUCERO,
NM Secretary for Department
Corrections, in her individual
capacity; WENCE ASONGANYI,
NMCD Health Services
Administrator, in his individual
capacity; ORION STRADFORD,
NMCD Bureau Chief, in his
individual capacity; MICHAEL
HILDENBRANDT, Wexford Director
of Operations, in his individual
capacity; DR. KESHAB PAUDEL,
Wexford Regional Medical Director,
in his individual capacity; SARAH
CARTWRIGHT, Wexford Regional
Director of Nursing, in her individual
capacity; DEANNI WOOD, Wexford
Regional Manager of WNMCF, in her
individual capacity; STEVEN
WHEELER, in his individual
capacity; ROCK WELCH, in his
individual capacity; JEFFREY

No. 25-2007

KELLER, in his individual capacity;
ANGELA GOEHRING, in her
individual capacity; KAREN RILEY,
in her individual capacity; JOHNNIE
LAMBERT, in her individual
capacity,

      Defendants - Appellees.

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:24-CV-00443-JCH-LF)**

_____

Clare A. Saunders of Arnold & Porter Kaye Scholer LLP, Boston,
Massachusetts (Jake W. Murphy of Arnold & Porter Kaye Scholer LLP,
Denver, Colorado; Andrew T. Tutt, Katie Weng of Arnold & Porter Kaye
Scholer LLP, Washington, D.C., with her on the briefs), for Plaintiff-
Appellant.

James J. Grubel of Park & Associates, LLC, Albuquerque, New Mexico
(Alfred A. Park of Park & Associates, LLC, Albuquerque, New Mexico; Mary
T. Torres of Law Offices of Mary T. Torres, Albuquerque, New Mexico; Bryan
C. Garcia, Jessica L. Czajkowski of Garcia Law Group, LLC, Albuquerque,
New Mexico; Jacqueline A. Olexy, Gregory D. Steinman, and M. Eliza
Stewart of Madison, Mroz, Steinman, Kenny & Olexy, P.A., Albuquerque,
New Mexico, with him on the brief), for Defendants-Appellees.

_____

Before **PHILLIPS**, **McHUGH**, and **FEDERICO**, Circuit Judges.

_____

**FEDERICO**, Circuit Judge.

_____

      Sandra Vasquez-Garcia was a prisoner at the Western New Mexico

Correctional Facility until May 7, 2021. Her medical care in custody was

overseen by a variety of state officials and government contractors. They

2

bore a particularly delicate responsibility for Vasquez-Garcia's care in light of her pre-existing health conditions, including diabetes. Vasquez-Garcia alleges, however, that throughout her incarceration, those responsible for her care failed to provide her with the necessary medical care. She sued the officials and contractors, and in the district court, she argued that their conduct was deliberately indifferent to her serious medical needs, in violation of her Eighth and Fourteenth Amendment rights.

Before the district court, each of the defendants asserted, in a Rule 12(b)(6) posture, that Vasquez-Garcia's claims were time-barred by the relevant statute of limitations. The district court dismissed Vasquez-Garcia's complaint on this basis.

We hold that this was error. The district court incorrectly applied the Rule 12(b)(6) standard for adjudicating the defendants' statute of limitations defense and misapplied the law of accrual for Vasquez-Garcia's injury. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse.

**I**

We begin by reciting the facts and then the procedural history of this case. As we normally do when reviewing a district court's dismissal of the complaint, we draw the facts from the well-pleaded allegations in the operative complaint itself. *See, e.g.*, *Griffith v. El Paso County*, 129 F.4th

3

790, 802 n.1 (10th Cir. 2025). The timing of events is significant for statute of limitations purposes, so we lay out the facts in a chronological timeline.[1]

### A

Sandra Vasquez-Garcia was incarcerated at the Western New Mexico Correctional Facility from at least September 22, 2017. At that time, she had been diagnosed with "diabetes, asthma, thyroid disorder, and blood pressure issues." App. at 22. On October 2, 2017, medical staff at the facility diagnosed her with "uncontrolled hyperglycemia."[2] App. at 22. She was prescribed certain diabetic medications. She reported to medical staff on November 15, 2017, that she had not received her medications. A little over two weeks later, she began to receive medications – but not the specific medications she was prescribed.

---

[1] Some of the defendants enter and exit the stage at various times, so we will flag these changes throughout by footnote, although these changes are not relevant to our disposition of the appeal. The "Centurion defendants" include the health service contractor Centurion LLC, its New Mexico subsidiary, and its various officers and employees. The "Wexford defendants" include the health service Wexford Health Sources, Inc. and its various officers and employees. The "Summit defendants" include the food service contractor Summit Food Service, LLC and its various officers and employees.

[2] At that time, the Centurion defendants were the relevant contractor retained by the New Mexico Corrections Department for the purposes of providing healthcare to people incarcerated by the Department.

On February 5, 2018, medical staff noted that Vasquez-Garcia's blood glucose levels had not reduced.[3] From February 5 through October 31, 2018, medical staff prescribed "various" medications. App. at 22. But their documentation of Vasquez-Garcia's blood glucose levels and healthcare was sporadic. For example, for the entire month of September, medical staff failed to document or track Vasquez-Garcia's medication regimen. By January 8, 2019, she had been diagnosed with "renal tubular acidosis" and "type four hyperkalemia," which staff noted was likely linked to her diabetes. App. at 22.

On February 1, 2019, medical staff ordered that Vasquez-Garcia be placed on a diabetic diet for the next 30 days.[4] The food she was provided with, however, was essentially the same as that provided to people without diabetes. On March 8, 2019, medical staff observed that Vasquez-Garcia's "blood glucose levels remained high and her hyperkalemia had not been

---

[3] Throughout our discussion of Vasquez-Garcia's complaint, we will draw inferences in favor of Vasquez-Garcia about facts of medical significance. For example, although we have no occasion here to review medical evidence, we infer that a heightened glucose level is unhealthy, and that Vasquez-Garcia's medications were intended to reduce her blood glucose level.

[4] At this time, the Summit defendants had contracted with the New Mexico Corrections Department for the purposes of providing food to people incarcerated by the Department.

5

resolved." App. at 23. Her blood contained high levels of glucose, urea nitrogen, and creatinine. Vasquez-Garcia was diagnosed with "diabetic mellitus nephrotic syndrome," and medical staff observed "swelling legs and weight gain." App. at 23. On March 13, 2019, medical staff further noted "worsening renal function with proteinuria" and diagnosed her with "diabetic nephropathy/chronic kidney disease stage three." App. at 23. By this point, medical staff noted that Vasquez-Garcia had "uncontrolled diabetes." App. at 23.

On April 9, 2019, medical staff increased the dosage for one of Vasquez-Garcia's prescription medications, and her blood sugar levels subsequently reduced. But on June 26, she complained to medical staff about blurred vision. She was diagnosed with "type two diabetes mellitus with proliferative diabetic retinopathy with macular edema" and a "vitreous hemorrhage in her right eye." App. at 24. The dosage of her prescription medication was again increased. On August 1, medical staff ordered a diabetic diet for 90 days, but again she did not receive the appropriate food. On September 10, 2019, Vasquez-Garcia reported seeing two air bubbles in her eye. No change in her treatment occurred as a result of this report.

On December 6, 2019, medical staff again noted that her blood glucose levels were high.[5] For over a month, however, Vasquez-Garcia had infrequent interactions with medical staff, and her condition was inadequately monitored. For example, no documentation of the medicine administered to her was kept for all of January 2020. High urea nitrogen and creatinine levels were observed in January and March.

Meanwhile, Vasquez-Garcia's eye problem persisted. On April 13, 2020, medical staff noted that she was experiencing eye pain. She was given eye drops to relieve dry eyes. On June 25, staff noted vision loss in her right eye. She was referred to an ophthalmologist, but nonetheless, on July 13, she was diagnosed with "chronic iridocyclitis" and "retinal edema." App. at 26. Finally, on August 7, 2020, a retina consultant recommended that Vasquez-Garcia receive a particular kind of eye injection. She never did.[6]

On October 26, 2020, Vasquez-Garcia was diagnosed with "congestive heart failure." App. at 26. For several months prior to that diagnosis, she had not received any medical care at all. The lack of care continued after

---

[5] By this time, the Wexford defendants had replaced the Centurion defendants as the contractors responsible for Vasquez-Garcia's healthcare.

[6] Vasquez-Garcia represents in her opening brief that "[s]he is now partially blind." Op. Br. at 15. She cites to a portion of the complaint that lists "blindness" as one of the injuries she has incurred. App. at 43.

her congestive heart failure diagnosis. By November 23, 2020, she was diagnosed with "stage three chronic kidney disease." App. at 26. Medical staff observed that she needed a kidney biopsy, but she never received one. Instead, on December 5, staff noted "critically high blood sugar levels" and on February 22, 2021, her kidney disease diagnosis escalated to stage four. App. at 26–27.

On May 7, 2021, Vasquez-Garcia was released from custody.[7] After her release, she was diagnosed with "stage five renal failure." App. at 27.

## B

On May 7, 2024, Vasquez-Garcia filed her complaint in the District of New Mexico. She sued an array of defendants – Centurion, LLC and its New Mexico subsidiary; MHM Health Professionals, Inc.; Wexford Health Sources, Inc.; and Summit Food Services, LLC; as well as various employees of these companies and New Mexico Corrections Department officials in their individual capacities. Vasquez-Garcia sought relief against all defendants for violations of her Eighth Amendment and Fourteenth Amendment right to be free from deliberate indifference, and against the

---

[7] Defendants dispute her release date. As the district court rightly noted and defendants appear reluctantly to concede, however, the complaint's (admittedly somewhat vague) allegation that she was released on May 7 is conclusive for Rule 12(b)(6) purposes (but only those purposes).

corporate defendants for having a policy and practice of violating her constitutional rights by deliberate indifference to her serious medical needs.[8] She principally requested compensatory and punitive damages under 42 U.S.C. § 1983.

Most of the defendants either moved to dismiss under Rule 12(b)(6) or joined a co-defendant's motion. Notably, MHM Health Professionals, Inc. and the chief executive officer of Centurion did not file a motion to dismiss. So far as the record discloses, these defendants were never served pursuant to Rule 4(c). All the properly served defendants asserted a statute of limitations defense.

The district court granted the defendants' motions to dismiss on statute of limitations grounds. Applying the relevant federal and New Mexico state law, the district court found three years to be the statute of limitations period for Vasquez-Garcia's claim. That is, Vasquez-Garcia must have filed her suit within three years of when she knew or had reason to know of the injury giving rise to her claims or they were time-barred. The district court inferred from the complaint's factual allegations that Vasquez-Garcia "knew of facts that would put a reasonable person on notice

---

[8] On appeal, the parties treat these two claims as essentially interchangeable for the purposes of the limitations issue, so we do as well.

9

that wrongful conduct caused the harm" for which she was seeking relief and "filed her claims against those defendants more than three years later." App. at 251–52. The district court therefore dismissed with prejudice all Vasquez-Garcia's claims against all defendants (including those not served) as untimely and barred by the statute of limitations.

The court entered final judgment on January 9, 2025, and this timely appeal followed.

## II

We begin with a fulsome discussion of our standard of review, which is central to the resolution of this appeal. We will then apply that standard to the complaint in this case and conclude that the district court should not have dismissed the complaint on Rule 12(b)(6) grounds. Finally, we will conclude by briefly addressing the district court's jurisdictional error in dismissing claims against defendants who were never properly served at the initiation of the lawsuit.

## A

"We review a district court's decision to grant or deny a motion to dismiss de novo." *Prager v. LaFaver*, 180 F.3d 1185, 1190 (10th Cir. 1999). On de novo review, this court stands in the shoes of the district court and applies the same standards as the district court when confronted with the

10

same questions. *Hooper v. City of Tulsa*, 71 F.4th 1270, 1282 (10th Cir. 2023).

On a Rule 12(b)(6) motion, those standards are generous to the plaintiff. Her allegations are mostly conclusive: the record is closed and consists only of the complaint, documents attached to or referred to in the complaint, and matters that are judicially noticeable. *Fuqua v. Santa Fe County Sheriff's Office*, 157 F.4th 1288, 1297–98 (10th Cir. 2025). There is no fact-finding, as we accept her well-pleaded factual allegations as true after setting aside mere legal conclusions. And the plaintiff receives the benefit of the doubt: we view the facts in the light most favorable to the plaintiff and draw all reasonable inferences in her favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). Together, these principles erect a relatively high bar for a Rule 12(b)(6) dismissal that leaves room for the district court to decide only one, largely legal question: whether the facts alleged, taken as true, plausibly state a claim upon which relief can be granted. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).

Plausibility is not probability, simply "more than a sheer possibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the plaintiff states a claim upon which relief can be granted so long as she alleges the facts for which *she* bears the burden of pleading. "A plaintiff need not anticipate in the

complaint an affirmative defense that may be raised by the defendant; it is the defendant's burden to plead an affirmative defense." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). It is therefore generally inappropriate to grant Rule 12(b)(6) dismissal on the basis of an affirmative defense, unless "the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Id.* "Only when the plaintiff pleads itself out of court – that is, admits all the ingredients of an impenetrable defense – may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

The statute of limitations defense asserted by the defendants here is an affirmative defense. Fed. R. Civ. P. 8(c)(1) (listing statutes of limitations as an affirmative defense). Defendants therefore face a difficult path to affirmance. We begin our discussion of the merits, however, with those points of law where there is no serious dispute: the statute of limitations, the law of accrual, and their application to Eighth and Fourteenth Amendment claims. We will then move to where the parties disagree, whether Vasquez-Garcia's complaint meets the low bar required to survive a statute of limitations defense asserted in a Rule 12(b)(6) motion.

12

**B**

42 U.S.C. § 1983 is a cause of action for plaintiffs seeking federal relief for federal rights violations, and on its face, there is no limit on the time within which to bring a § 1983 claim, "a void which is commonplace in federal statutory law." *Wilson v. Garcia*, 471 U.S. 261, 266 (1985) (quoting *Board of Regents v. Tomanio*, 446 U.S. 478, 484 (1980)). But the Reconstruction Congress provided that we apply state law for "the trial and disposition of" § 1983 claims, "so far as the same is not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988(a). So we apply the forum state's statute of limitations for personal injury actions to § 1983 claims brought in federal court. *Wilson*, 471 U.S. at 276.

Vasquez-Garcia brought her claim in the District of New Mexico, and under New Mexico law, the statute of limitations for personal injury actions is three years from the point of accrual. N.M. Stat. Ann. § 37-1-8. So, the limitations period is three years, and if Vasquez-Garcia's claim accrued more than three years before she filed her complaint, her claims are time-barred.

Determining the point of accrual is a question of federal law, not state law. *Ullery v. Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020); *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the

13

action." *Baker v. Board of Regents*, 991 F.2d 628, 632 (10th Cir. 1993).[9]

Importantly, a civil rights claim accrues when the *facts* necessary for each

element of the claim are known or reasonably knowable to the plaintiff.

*Alexander v. Oklahoma*, 382 F.3d 1206, 1216 (10th Cir. 2004). Her claim

will accrue even if she did not and could not know that a violation of the

*law* has occurred. *See Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005)

("Indeed, 'it is not necessary that a claimant know all of the evidence

---

[9] One could read *Wallace v. Kato* to hold that a civil rights claim accrues the moment that the plaintiff is injured, not when the injury was known or knowable. 549 U.S. 384, 388 (2007). In other words, *Wallace* arguably established an injury rule, not a discovery rule, for the accrual of civil rights claims. *See also Corner Post, Inc. v. Board of Governors of Federal Reserve System*, 603 U.S. 799, 809–11 (2024); *TRW Inc. v. Andrews*, 534 U.S. 19, 37 (2001) (Scalia, J., concurring in the judgment) (describing the notion of a general discovery rule under federal law as "bad wine of recent vintage"). The defendants here, however, conceded that a discovery rule applies. Resp. Br. at 14. *See also Herrera v. City of Espanola*, 32 F.4th 980, 990 (10th Cir. 2022) (discovery rule); *Cao v. Puerto Rico*, 525 F.3d 112, 115 (1st Cir. 2008) (same); *Mallet v. N.Y. State Dep't of Corrections & Community Supervision*, 126 F.4th 125, 131 (2d Cir. 2025) (Calabresi, J.) (same); *Coello v. DiLeo*, 43 F.4th 346, 352 (3d Cir. 2022) (same); *A Society Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (same); *Jenkins v. Tahmahkera*, 151 F.4th 739 (5th Cir. 2025) (same); *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) (same); *Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019) (same); *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (same); *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (same); *Rassier v. Sanner*, 996 F.3d 832, 837 n.3 (8th Cir. 2021) (reserving the question but acknowledging unpublished circuit decision applying discovery rule); *Earle v. D.C.*, 707 F.3d 299, 306 (D.C. Cir. 2012) (acknowledging that discovery rule might be applicable).

ultimately relied on for the cause of action to accrue.'" (quoting *Baker*, 991 F.2d at 632)). But when the law itself establishes a high burden with respect to facts that a plaintiff must allege and eventually prove, drawing the appropriate line can be difficult. Thus, "[a]n accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed." *McDonough v. Smith*, 588 U.S. 109, 115 (2019) (quoting *Manuel v. Joliet*, 580 U.S. 357, 370 (2017)).

Here, that baseline constitutional right is the right to be free from the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Robinson v. California*, 370 U.S. 660, 667 (1962). The Supreme Court has long held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted, quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (op. of Stewart, J.)).

To obtain relief for a violation of this constitutional proscription, a plaintiff must allege and eventually prove two things. First, she must show that she faced a substantial risk of harm that is "objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *Hardy v. Rabie*, 147 F.4th 1156, 1164 (10th Cir. 2025) ("[T]he harm suffered must be 'sufficiently serious' to implicate

15

the Eighth Amendment's prohibition of cruel and unusual punishment."
(citation omitted)). Second, she must show that the defendant acted with
"deliberate indifference" – that is, that the defendant subjectively knew of
the risk of harm and disregarded it anyway. *Farmer*, 511 U.S. at 837 ("[T]he
official must both be aware of facts from which the inference could be drawn
that a substantial risk of serious harm exists, and he must also draw the
inference.").

Together, these elements establish a relatively high bar for a
constitutional claim of deliberate indifference to prevail on the merits.
When married with the statute of limitations and accrual rules, however,
these elements set a correspondingly high bar for a statute of limitations
defense to prevail, especially at the pleadings stage. Thus, in the motion to
dismiss, the defendants bore the burden of showing that it was implausible,
based solely on the complaint, that Vasquez-Garcia's injury accrued within
three years prior to her filing suit.

Vasquez-Garcia argues that the defendants did not clear this bar in
the district court. She reasons that the complaint did not foreclose the
plausibility that Vasquez-Garcia did not know and could not reasonably
have known the facts underlying her legal claim – the defendants'
subjective deliberate indifference and the objective seriousness of her injury
– until after she was released from prison and diagnosed with stage five

16

renal failure. Alternatively, she argues that the defendants' conduct was a continuing violation that continued until the day of her release, exactly three years before she filed her complaint. Either theory of accrual would place Vasquez-Garcia's complaint within the limitations period.

The defendants respond that it is implausible that Vasquez-Garcia did not or could not have known of her injury until May 7, 2021, or sometime after. They point to the escalating symptoms she alleges in her complaint and argue that these events would have made Vasquez-Garcia aware of her worsening condition and each of the defendants' alleged deliberate indifference to it. They argue also that Vasquez-Garcia's complaint identifies several discrete acts of alleged unconstitutionality, not one continuous violation, so she cannot rely on a continuing violations theory. Defendants must prevail on both arguments for us to affirm the judgment in their favor.

Down the line, we agree with Vasquez-Garcia. Her complaint alleges more than a sheer possibility that her injury was neither known nor reasonably knowable until after she was released from prison. And alternatively, the nature of her injury made the defendants' alleged conduct a violation that continued until the day she was released. We will address her theory of ordinary accrual first, before turning to the continuing violations doctrine.

17

**1**

For Vasquez-Garcia's claims to be time barred, the defendants needed to show that her allegations, taken as true, demonstrate that she knew or reasonably could have known of her injury before May 7, 2021. Thus, we must first inquire into when Vasquez-Garcia knew about her injury relative to the date she filed suit.

Critically, however, the term injury for accrual purposes does not just mean a medical injury. That is, a claim does not accrue simply because the plaintiff knows that she has a serious medical injury. The facts that tie this medical injury to a *legal* harm must also be known or knowable. That does not mean that the plaintiff must be aware that the law has been violated as to her; she must merely be aware of the facts underlying the legal claims. As the Supreme Court has said, this marks the moment of a "complete and present cause of action" as the usual point of accrual. *See, e.g.*, *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc.*, 522 U.S. 192, 201 (1997) (Ginsburg, J.) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)).

For some civil rights claims, the plaintiff may be simultaneously aware of both the medical injury and the facts that tie the medical injury to a legal one, even without full knowledge of a constitutional violation. But for other claims, the elements of a legal claim may be subtle enough to put

distance between the time of injury and the time at which the plaintiff becomes aware of the surrounding circumstances that render the medical injury a constitutionally salient one.

Here, for example, Vasquez-Garcia's alleged claims did not accrue whenever she incurred an injury. Nor did her claims accrue whenever she became aware of her injuries. Instead, her claims accrued when she knew or reasonably could have known that a) her injuries were objectively and sufficiently serious and b) the defendants acted with the requisite subjective state of mind, which is deliberate indifference. *Mallet v. N.Y. State Dep't of Corrections & Community Supervision*, 126 F.4th 125, 132 (2d Cir. 2025) ("Under this standard, the accrual analysis for an Eighth Amendment deliberate indifference claim often raises factual questions about when a plaintiff knew or should have known of the circumstances tending to establish either the objective or subjective components of the alleged violation.").

There are no facts alleged in the complaint that support the inference that Vasquez-Garcia knew or reasonably should have known the subjective component of her deliberate indifference claim outside the statute of limitations period. Indeed, during oral argument counsel for the defendants conceded that there is nothing in the complaint about what Vasquez-Garcia knew and when she knew it. Oral Arg. at 26:33–40. Instead, her complaint

lists a series of escalating symptoms which appear to be primarily related to diabetes, observations and diagnosis by medical providers, and treatments ordered but not properly administered by the medical staff. It says nothing about what the medical staff told her about her symptoms, conditions, or proposed treatment courses. We can make no inferences in defendants' favor about what is not said in the complaint about her knowledge.

There is nothing in the complaint that indicates that a reasonable person in Vasquez-Garcia's condition would have been able to discover, outside the limitations period, that these escalating symptoms were the result of the defendants' conduct, much less that she could have known that the defendants knew of the risk to her health and consciously disregarded it nonetheless. *Farmer*, 511 U.S. at 837. So, even if Vasquez-Garcia knew or should have known that she faced an objectively and sufficiently serious risk to her health, her complaint plausibly alleges that she still did not have and could not have had knowledge of defendants' state of mind until after she was released from prison and learned that her health had rapidly deteriorated to a nearly untreatable point. Based upon the complaint, it was only then that she could have drawn the inference that something went seriously awry with the medical care she was denied or improperly received while she was incarcerated.

At least, this is the conclusion that is reached when all reasonable inferences are drawn in Vasquez-Garcia's favor. The district court here did the opposite. Throughout its order, the district court relied on facts that Vasquez-Garcia did *not* allege to find that her injury was known or knowable outside the limitations period. That was error. It was not Vasquez-Garcia's burden to plead those facts. And on a motion to dismiss, when there are gaps in the plaintiff's complaint, we fill those gaps with reasonable inferences drawn in favor of the plaintiff, not against her. In disregarding these basic principles, the district court made the kind of fact-finding barred by Rule 12(b)(6).

For example, the district court found that Vasquez-Garcia had not alleged "that she thought she was being provided with the proper diet and medications, when in fact she was not." App. at 251. But this missing allegation is not part of an element of her claim – it is an element of the defendants' limitations defense. And in any event, from the allegations that Vasquez-Garcia was denied a diabetic diet and continued to eat the food she was provided, we reasonably infer that she did not know that the food posed a risk to her health.

On appeal, the defendants rely heavily on our decision in *Vasquez v. Davis* to urge affirmance. 882 F.3d 1270 (10th Cir. 2018). In that case, we held that the plaintiff's claims were time barred because, outside the

21

limitations period, he "knew he had been substantially harmed" and understood that the defendants' conduct had harmed him. *Id.* at 1276–77. But that case came to us on appeal from summary judgment, where we apply a very different standard of review in light of the expanded record. *Id.* at 1275; *Alexander*, 382 F.3d at 1213–15. Additionally, the record in *Vasquez* disclosed exactly the kind of evidence that is missing here: the plaintiff's knowledge of both the objective and subjective components of defendants' deliberate indifference. *Vasquez*, 882 F.3d at 1276 ("The claim accrued once Vasquez knew Defendants' deliberate indifference caused him substantial harm, 'even though the full extent of the injury is not then known or predictable.'" (quoting *Wallace*, 549 U.S. at 391)).

In addition to *Vasquez*, we held in another case that severe pain may, sometimes, be enough to satisfy the objective prong. *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005) ("[S]evere chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard."). Even if the defendants here had argued that Vasquez-Garcia had alleged knowledge of pain severe enough to satisfy the objective prong, however, that would still leave open the question of whether Vasquez-Garcia had alleged knowledge of the defendants' deliberate indifference. *Mata* also held that a plaintiff can satisfy the subjective prong by showing that a defendant did nothing at

all in response to a risk of harm. *Id.* at 755–56. Arguably, in such cases, the plaintiff should be on notice of the subjective deliberate indifference of the defendants.

But that is not what happened here. Instead, the defendants did do things – provided the wrong pills when Vasquez-Garcia requested her medication, provided dry eye drops instead of the specialist-prescribed injections, failed to provide her with proper diabetic meals, and so forth. In other words, the inference we draw in favor of Vasquez-Garcia is that her custodians did just enough to keep Vasquez-Garcia unaware of their (alleged) deliberate indifference while she was incarcerated, but not enough to escape allegations of deliberate indifference once Vasquez-Garcia was released and the full picture came into view.

We therefore hold that Vasquez-Garcia's complaint, taking all its factual allegations as true and drawing all reasonable inferences in her favor, plausibly alleges that her injury was not known or knowable until after she was released on May 7, 2021.

**2**

The preceding discussion identifies sufficient error to reverse. However, the parties raised and fully briefed the continuing violations doctrine as an alternative basis for reversal, and that doctrine was passed upon by the district court. Since we will remand this case for further

23

proceedings, it is not only possible but likely that arguments concerning the continuing violations doctrine will recur on remand. For example, if Vasquez-Garcia's theory of ordinary accrual falls apart after discovery, she will likely shift the weight of her case to a continuing violations theory to remain within the limitations period. So, we will also address the issue presented by the parties: whether the continuing violations doctrine applies to Vasquez-Garcia's complaint.

But first, we will explain what the continuing violations doctrine is. As much a creature of equity as an application of common sense, the doctrine recognizes that some claims are based on "no single discrete act" but rather, "the cumulative effect" of several individual acts. *Herrera v. City of Espanola*, 32 F.4th 980, 993 (10th Cir. 2022) (quoting *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). The plaintiff seeking to rely on the continuing violations doctrine must allege a claim "premised on a series of actions amounting to a single violation of their rights." *Id.* at 997.[10] The doctrine's limiting principle is that it "is triggered 'by continual unlawful acts, not by continual ill effects from the original violation.'" *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011) (citation omitted). So at

---

[10] Critically, as we will discuss, the continuing violations doctrine is generally applicable to § 1983 claims, but we acknowledge the dearth of cases applying it specifically to deliberate indifference claims.

24

the pleadings stage, the plaintiff must allege unlawful acts or omissions reaching into the limitations period in order to rely on the continuing violations doctrine. *Vasquez*, 882 F.3d at 1277.

Vasquez-Garcia did so here. Vasquez-Garcia alleges that she suffered from a chronic condition that needed continuous monitoring and treatment. It logically follows that the failure to provide regular monitoring, and proper treatment is itself a continuous violation. *See also Shomo v. City of New York*, 579 F.3d 176, 182, 184–85 (2d Cir. 2009) (applying continuous violations doctrine to Eighth Amendment deliberate indifference claim).

The defendants counter that Vasquez-Garcia must allege some act or omission that occurred within the three-year statute of limitations period. We agree that any continuous violation extended only as far the last act or omission that constituted deliberate indifference, consistent with *Vasquez*. 882 F.3d at 1277 ("[T]he continuing violation doctrine, as we have defined it, would apply here only when a particular defendant allegedly committed wrongful acts within, as well as outside, the limitations period.") But the defendants misunderstand the nature of the alleged violation here. Vasquez-Garcia alleges that the failure to provide her with adequate treatment for her chronic conditions constituted deliberate indifference. She alleges that defendants' failure to properly treat her continued until

25

the very last day she was in the defendants' custody – the day she was released, May 7, 2021.

The district court concluded that "[t]he Tenth Circuit has not held that the [continuing violations] doctrine applies to Section 1983 cases." App. at 253. This was plainly erroneous because we *have* held this doctrine applies in § 1983 cases. *Herrera*, 32 F.4th at 986 ("[W]e hold that the continuing violation doctrine is available within the § 1983 context[.]"). And the facts here are consistent with those in *Herrera*.

In *Herrera*, the plaintiff sued because the city government had cut off their water service. *Id.* at 987. We determined that on the plaintiff's theory of the case, "no additional act or cumulative effect of acts was needed to give rise to the claims Appellants seek to advance because the initial termination of service provided a basis for of all the elements of their claims." *Id.* at 998. As a result, we found the continuing violation doctrine could not save Herrera's claims. *Id.* Here, by contrast, it is precisely the "cumulative effect" of the defendants' alleged conduct that underwrites Vasquez-Garcia's theory of liability: no single act would necessarily be enough to allege a deliberate indifference claim, as it has been alleged, but together, they comprise a continuing violation.

Our holding today is limited to the facts alleged and should not be construed to hold that the continuing violations doctrine applies to all

Eighth Amendment claims of deliberate indifference. We need not and do not decide the outer contours of the doctrine. We hold merely that where, as here, the plaintiff alleges that the defendants observed but persistently failed to properly treat her chronic, continuous health conditions, she may rely on the continuing violations doctrine to survive a statute of limitations defense.

## III

Before we conclude, there is one more matter to resolve. As foreshadowed in our explanation of the procedural history of this appeal, the district court dismissed with prejudice all claims against two defendants who had not been served. That was error.

A district court does not have personal jurisdiction over defendants who neither have been served nor have waived service. Fed. R. Civ. P. 4(k); *Williamson v. Sena*, 229 F.R.D. 663, 667 (D.N.M. 2005). And without jurisdiction over the unserved defendants, the district court could not dismiss with prejudice claims against them. *Hollander v. Sandoz Pharmaceutical Corp.*, 289 F.3d 1193, 1216–17 (10th Cir. 2002). The district court therefore erred in addressing and then dismissing with prejudice the claims against the unserved defendants. Although we reverse the judgment on substantive grounds, the district court should address this jurisdictional limit on remand.

27

## IV

A statute of limitations defense asserted in a Rule 12(b)(6) posture is a steep hill for defendants to climb. When combined with the accrual analysis for § 1983 claims and the underlying substantive elements of a deliberate indifference claim, it became trebly difficult for the defendants here to prevail on their statute of limitations defense at this juncture of the case.

In its findings, the district court erroneously gave the benefit of the doubt to the defendants rather than to Vasquez-Garcia. Additionally, the district court erroneously failed to apply the continuing violations doctrine on a mistaken understanding of our precedent. Under the correct understanding, Vasquez-Garcia has alleged a continuing violation. We therefore REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.